**UNITED STATES of America, Plaintiff,**

v.

**SCM CORPORATION, Defendant.**

**Civ. A. No. R–85–09.**

United States District Court, D. Maryland.

Aug. 12, 1985.

Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., James M. Baker, Philadelphia, Pa., Ellen M. Mahan, Judith Katz, Washington, D.C., for plaintiff, U.S.

Charles Lettow, Washington, D.C., Joseph S. Kaufman, Baltimore, Md., Samuel Friedman, New York City, for defendant SCM Corp.

### MEMORANDUM

RAMSEY, District Judge.

This case presents the issue of whether an enforcement action brought on behalf of the Environmental Protection Agency pursuant to the Clean Air Act should be dismissed or stayed under the *"Colorado River* doctrine" where the defendant has entered into an administrative consent order with the state agency charged with enforcing the same standards sought to be enforced in the federal action.

The United States brought this action against the SCM Corporation (hereinafter "defendant" or "SCM") at the request of the Administrator of the Environmental Protection Agency (hereinafter "EPA"). The action, brought pursuant to 42 U.S.C. § 7413(b), seeks injunctive relief and the imposition of civil penalties as a result of defendant's alleged violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, and the State Implementation Plan approved by EPA pursuant to the Act.

Currently before the Court is SCM's motion to dismiss the complaint or to stay the proceedings. Defendant's motion is op-posed by the plaintiff, and the issues have been thoroughly briefed by the parties. Despite defendant's request for a hearing, the Court finds evidence and argument unnecessary and now denies defendant's motion for the reasons stated below. *See* Local Rule 6 (D.Md.1985).

### I. INTRODUCTION

#### A. *Statutory Framework*

The Clean Air Act (hereinafter "the Act"), 42 U.S.C. § 7401 *et seq.*, established programs for pollution control involving state and local governments as well as the EPA. The Act provides, *inter alia,* that the EPA establish primary and secondary "national ambient air quality standards" ("NAAQS") for air pollutants having an adverse impact on public health or welfare.[1] 42 U.S.C. § 7409.

The Act also requires that each state adopt and submit to the EPA a "State Implementation Plan" ("SIP") to attain and maintain the federally promulgated NAAQS. 42 U.S.C. § 7407 and 7410. If a state fails to submit a plan which satisfies the Act's requirements, EPA is authorized to adopt a substitute SIP for the area involved. 42 U.S.C. § 7410(c). If the state-adopted SIP satisfies the requirements of the Act, it is approved by the EPA and may, thereafter, be enforced by both the state and the EPA.

If the EPA finds that a person is in violation of a federally approved SIP, the EPA must give notice to both the alleged violator and to the state. If the violation extends beyond the thirtieth day following the required notification, the EPA may order compliance or bring a civil enforcement action. 42 U.S.C. § 7413(a)(1). Such a civil action may be brought in the district court of the United States for the district in which the violation occurred, and the court shall have jurisdiction to restrain the violation, to require compliance, and to assess civil penalties of up to $25,000 per day of violation. 42 U.S.C. § 7413(b). If the

---

**1.** Primary NAAQS are those "required to protect the public health;" secondary NAAQS are those "requisite to protect the public welfare." 42 U.S.C. § 7409(b).

Court finds that the civil enforcement action was unreasonably brought, it may award defending parties the costs of litigation, including attorney and expert witness fees. *Id.*

In 1972, the EPA promulgated primary and secondary NAAQS for particulate matter and other air pollutants. *See* 40 C.F.R. §§ 50.6, and 50.7. Following the promulgation of those standards, Maryland adopted and the EPA approved a Maryland SIP which is published in the Code of Maryland Regulations (COMAR) and in the Code of Federal Regulations. *See* COMAR 10.18.06; 40 C.F.R. Subpart V §§ 52.1070–52.1117. The Maryland SIP, in pertinent part and with exceptions not here relevant, prohibits the discharge of particulate matter in amounts greater than 0.03 grains per dry standard cubic foot of exhaust gas, COMAR 10.18.06.03B(2)(a) (hereinafter the "particulate-matter standard"), and further prohibits the emission of sulfuric acid mist in a concentration greater than 70 micrograms per cubic meter of exhaust gas. COMAR 10.18.06.05c(2) (the "sulfuric-acid standard"). The violation of these provisions of the Maryland SIP is alleged in the case at bar. The Maryland SIP also prohibits the discharge of emissions, other than water in an uncombined form, that are visible to human observers. COMAR 10.-18.06.02B (the "visible-emission standard").

The State of Maryland has also enacted air pollution control laws which are codified in Title 2 of Md. Health-Environmental Code Ann. (1982). Under Maryland law, the state's Department of Health and Mental Hygiene (hereinafter "the Department" or "the state agency") is required to establish state ambient air quality standards identical to the federal standards unless a political subdivision requests a more restrictive standard. § 2–302(c). The Department must also adopt emission standards to attain and maintain the ambient air quality standards. § 2–302(d). The Department may adopt other rules and regu-lations for the control of air pollution. § 2–301(a).

Under the enforcement provisions of the Maryland law, the Department may issue show cause and corrective orders, §§ 2–602 to 608, or bring enforcement actions to enjoin alleged violations and impose civil penalties. § 2–609(a). The Department may recover in an enforcement action brought in the circuit court for any county up to $10,000 per violation per day.[2] § 2–610(a). All proceedings under the Maryland air quality control law are to be brought by the Department, and "[n]o person other than [the] State acquires actionable rights by virtue of [that law]." § 2–106.

### B. *Factual Background*

Defendant SCM operates the Adrian Joyce Works in Baltimore, Maryland, at which plant defendant manufactures titanium dioxide, a white pigment used in paint, plastics, paper and other materials.

In May of 1982, the state agency conducted emission tests at defendant's plant. On January 5, 1983, a Notice of Violation and Show Cause Order was issued to defendant by the state agency. The notice alleged, based on the May 1982 tests and observations, that defendant was in violation of the state's particulate-matter, sulfuric-acid, and visible-emission standards. Defendant was informed by that notice of sanctions available under the Health-Environmental Article of the Maryland Code, and was ordered to show cause why a corrective order should not issue. Discussions ensued between the company and the state agency regarding the reliability of the testing procedures and whether defendant's facilities were in fact in compliance with the state standards.

Meanwhile, on April 20, 1984, the EPA issued a Notice of Violation to the defendant company based on tests conducted in December of 1983. The federal notice alleged that defendant was in violation of the

**2.** Compare the provisions of the federal Act which provides for civil penalties of up to $25,-000 per day of violation. 42 U.S.C. § 7413(b).

sulfuric-acid and particulate-matter standards in the Maryland SIP which had been federally approved pursuant to the Clean Air Act. The alleged violations concerned the operation of calcining Kilns No. 2 and 3 at defendant's Adrian Joyce Works. The notice also informed defendant of enforcement actions which could be taken pursuant to the federal Act if the violations continued more than thirty days following the EPA notification.

In December of 1984, the state agency and the company reached an agreement to enter a consent order with regard to the state's notice of violation. The EPA, aware of the agreement, brought this action on January 2, 1985. The Consent Order between the state agency and the company was executed and effective on January 7, 1985.

The Consent Order entered by the defendant and the state agency, while preserving the parties' respective positions on the issues of compliance and test validity, provides in part: (1) for the installation of certain equipment by SCM on Calcining Kilns No. 1, 2, and 3 by December 15, 1985; (2) for the performance of stack tests [3] for Kiln No. 1 by April 30, 1985, and for Kilns No. 2 and 3 by December 15, 1985; (3) that in the event that the stack tests fail to demonstrate compliance, the company shall within three months submit a new plan providing for full compliance by July 1, 1986, subject, however, to certain rights reserved to the company; [4] (4) for stipulated penalty payments if the company fails to install the new equipment by the dates specified; and (5) for the payment by SCM of a "compromise civil penalty" in the amount of $5,000 and a donation to the

Johns Hopkins University in the amount of $10,000 to be used for consulting services to the state agency.

As noted above, the United States brought this action, at the request of the EPA, on January 2, 1985. Plaintiff seeks injunctive relief and the imposition of civil penalties under the Clean Air Act. The complaint, predicated upon the federal Notice of Violation issued in April of 1984, alleges that the company has continued to violate the sulfuric-acid and particulate-matter standards in the operation of Kilns No. 2 and 3 for more than thirty days after the issuance of the Notice of Violation.

## II. DISCUSSION

As discussed in Section I–A above, the Clean Air Act requires a state to adopt a State Implementation Plan (SIP) which will satisfy the National Ambient Air Quality Standards (NAAQS) promulgated by the EPA pursuant to the Act. Once an SIP has been approved by the EPA, as Maryland's has, it may be enforced by the EPA as well as the state. Maryland law similarly provides for enforcement of the state's SIP and other pollution control regulations in state administrative proceedings and state-court actions.

This action is brought by the EPA under the federal Act to enforce the EPA-approved SIP. Defendant now moves this Court to dismiss or stay the action because of the administrative consent order agreed to by defendant and the state agency. The consent order was made subsequent to the issuance of EPA's Notice of Violation and nearly simultaneous to the bringing of the

---

**3.** A stack test is a physical sampling and analyzing of the gas stream in an emission stack. It is used to determine compliance with the sulfuric-acid mist and particulate-matter standards at issue in this case.

**4.** If the stack tests fail to demonstrate compliance,

    the Company reserves the rights (a) to challenge the Department's position regarding conditions for the test, (b) to petition for a rule establishing different test conditions, (c) to petition for a regulation amendment that

would relax the applicable emission standards, or (d) a combination of the foregoing. If the stack test for Calincer No. 1 demonstrates a significant improvement resulting in substantial compliance with the Department's standards, then the Department may require the completion of the improvements for the stack on Calciner Nos. 2 and 3 provided that the Department will initiate a regulation amendment that would relax the applicable emission standard.

Consent Order at p. 8.

instant federal action. The administrative consent order, and the underlying state violation notice, concern, *inter alia,* the alleged violations of Maryland's SIP which are the subject of the present federal enforcement action. Defendant argues that the state administrative consent order precludes, at least for the present, the prosecution of this action to enforce the same SIP violations addressed by that order.

At the outset, it may be well to note the grounds upon which the defendant does not rely. Defendant does not assert that this Court lacks jurisdiction over the instant case, or that plaintiff has failed to meet any of the statutory conditions precedent for the bringing of the action. Defendant does not suggest that this Court should refrain from exercising its jurisdiction under one of the traditional abstention doctrines.[5] Nor does the defendant contend that plaintiff's action is barred by issue or claim preclusion, the two branches of the doctrine of *res judicata.*

Instead, defendant SCM urges that the Court should dismiss or stay this action under the doctrine of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Defendant maintains that this Court should follow the District of Delaware which relied upon the *Colorado River* doctrine to stay an EPA action under the Clean Water Act, 33 U.S.C. § 1251 *et seq.,* in *United States v. Cargill, Inc.,* 508 F.Supp. 734 (D.Del.1981) (Latchum, C.J.).

In *Colorado River,* the United States brought an action in federal court, on its own behalf and on behalf of several Indian tribes, seeking adjudication of water rights based on federal and state law. One of the defendants in that suit thereafter sought in state court to make the United States a party to water-right proceedings in state court, which proceedings are held on a continuous basis. The state-court application by the federal-suit defendant sought to make the United States a state-court party for the purpose of there adjudicating all the claims of the United States, both state and federal, pursuant to the McCarran Amendment[6] which provides the consent of the United States to suits against it in state courts concerning water rights.

After the United States was served with process in the state-court action pursuant to the McCarran Amendment, defendants in the federal action brought by the United States moved to dismiss that action on the ground that the federal court was without jurisdiction in light of the McCarran Amendment. Without reaching the jurisdictional question, the District Court granted defendants' motion to dismiss on the basis of the abstention doctrine. The Tenth Circuit reversed, holding that jurisdiction was proper and abstention inappropriate. The Supreme Court reversed the Court of Appeals and held that the District Court's dismissal was justified, albeit for different reasons than those relied upon by the District Court.

Justice Brennan, writing for six members of the Court, held first that the McCarran Amendment in no way diminished federal jurisdiction under 28 U.S.C. § 1345 or § 1331.[7] *Colorado River,* 424 U.S. at 809, 96 S.Ct. at 1242. That Amendment, held the Court, did allow concurrent jurisdiction over the water rights in question in the state court. *Id.* at 809–13, 96 S.Ct. at 1242–44. The Court next held that although dismissal could not be supported on the basis of any traditional form of the abstention doctrines, *id.* at 813–17, 96 S.Ct. at 1244–46, dismissal was justified nonetheless on the basis of "principles governing the contemporaneous exercise of

---

5. The traditional abstention doctrines were discussed in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–16, 96 S.Ct. 1236, 1244–46, 47 L.Ed.2d 483 (1976). *See also* H. Hart & H. Wechsler, *The Federal Courts and the Federal System* at 985–1050 (2d ed. 1973).

6. 43 U.S.C. § 666.

7. 28 U.S.C. § 1345 creates federal jurisdiction over actions brought by the federal government. 28 U.S.C. § 1331 provides for the general federal-question jurisdiction of the federal courts.

concurrent jurisdiction." *Id.* at 817–21, 96 S.Ct. at 1246–48.

The principles governing contemporaneous exercise of concurrent jurisdiction are unrelated to considerations of proper constitutional adjudication or regard for federal-state relations.[8] *Id.* at 817, 96 S.Ct. at 1246. Instead, they "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Id.* [quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952) (affirming Third Circuit decision providing for stay of federal action in one district in favor of a federal action in a second district where all parties' claims could be adjudicated)].

The principles governing contemporaneous exercise of concurrent jurisdiction are more deferential when both courts involved are federal than they are when a federal court is asked to stay its hand in favor of a state-court proceeding. *Id.* at 817, 96 S.Ct. at 1246. As between federal courts, the general principle is to avoid duplicative litigation. *Id.* A federal court has broad discretion in such a case to stay its hand pending the outcome of another federal proceeding. *See Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Kerotest, supra,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200.

■ As between state and federal courts, however, "the rule is that 'the pendancy of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . .' [citations omitted]. This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the

federal courts to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246. Circumstances permitting dismissal of a federal suit in the face of a concurrent state proceeding for reasons of wise judicial administration are more limited than the circumstances apropriate for abstention. *Id.* at 818, 96 S.Ct. at 1246. The former circumstances must be exceptional, and only the clearest of justifications can warrant dismissal. *Id.* at 818–19, 96 S.Ct. at 1246–47.

■ In *Colorado River,* the Court cited several factors which might in some combination outweigh the obligation of the federal courts to exercise jurisdiction. These factors include 1) the earlier assumption of jurisdiction over property by a state court;[9] 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; and 4) the order in which jurisdiction was obtained by the concurrent forums. *Id.* at 819, 96 S.Ct. at 1247.

In holding that dismissal was appropriate, the Court relied primarily on "the clear federal policy" evinced by the McCarran Amendment to avoid "piecemeal adjudication of water rights." *Id.* at 819, 96 S.Ct. at 1247. The Court found this statutory policy "akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property."[10] The Court also relied upon the extensive involvement in the case of state water rights, the inconvenience of the federal forum, and the fact that the federal government was already participating in other state water-rights proceedings. *Id.* at 820, 96 S.Ct. at 1247. The Court expressly declined to decide whether even the applicability of the McCarran Amendment would be sufficient to warrant dismissal if the involvement of state water rights were less extensive or if the state proceedings were

---

**8.** Compare the abstention doctrines discussed in *Colorado River,* 424 U.S. at 813–16, 96 S.Ct. at 1244–46, which are based on such considerations.

**9.** This "factor" might be viewed as a restatement of the rule requiring a court to refrain from asserting jurisdiction over a *res* over which another court has previously assumed jurisdiction. *See Princess Lida v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

**10.** For a critique of the Court's invocation of this rule in the circumstances of the *Colorado River* case, see Justice Stewart's dissent at 424 U.S. 821, 822–25, 96 S.Ct. at 1248–50.

in some respect inadequate to resolve the federal claims. *Id.* at 820, 96 S.Ct. at 1247.

The *"Colorado River* doctrine" governing situations involving the contemporaneous exercise of concurrent jurisdiction by state and federal courts was clarified in *Moses H. Cone Memorail Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In *Cone,* the Court held that the District Court abused its discretion in staying a diversity action to compel arbitration pending a previously filed state-court action which sought, *inter alia,* a declaratory judgment that there was no right to arbitration.[11]

The Court in *Cone* reiterated that "only the clearest of justifications" will warrant dismissal under the *Colorado River* doctrine. *Id.* at 16, 103 S.Ct. at 937. That doctrine does not rest on considerations of state-federal comity, but on a balancing of the factors discussed in *Colorado River,* "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 14, 16, 103 S.Ct. at 936, 937. The most important factor in the decision to affirm dismissal in *Colorado River* was the clear McCarran Amendment policy to avoid piecemeal adjudication of water rights in a river system. *Id.* at 16, 103 S.Ct. at 937. In addition to the four factors discussed in *Colorado River,* a court applying the *Colorado River* "exceptional circumstances" test should consider the fact that federal law provides the rule of decision on the merits as a major factor militating against a stay or dismissal of the federal action. *Id.* at 23–26, 103 S.Ct. at 941–42.

In reiterating that federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them,"[12] the Court made clear that exceptional circumstances are required to support *either a stay or a dismissal* of the federal action: ... a stay is as much a refusal to exercise federal jurisdiction as a dismissal.

When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. [citations omitted]. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will having nothing further to do in resolving any substantive part of the case, whether it stays or dismisses. [citations omitted].

*Id.* at 28, 103 S.Ct. at 943.

In this case, defendant argues that the *Colorado River* doctrine warrants dismissal or, in the alternative, a stay of this action. Defendant maintains that *Colorado River* is applicable because 1) the instant action is duplicative and redundant in light of the state agency's consent order; 2) allowing this suit to proceed would undercut state enforcement of air pollution control laws; and 3) the bringing of this action in federal court contravenes a congressional intent that states be the primary enforcers of federal standards.

■ As should be clear from the extended discussion above of the *Colorado River* and *Moses Cone* cases, the *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals. At the outset, a party invoking the *Colorado River* doctrine must demonstrate, beyond "any substantial doubt," the existence of parallel state-court litigation that will be an adequate vehicle for the complete and prompt resolution of the issues between the federal-court parties. *Moses Cone,* 460 U.S. at 28, 103 S.Ct.

---

**11.** Justice Brennan wrote for a six-member majority. Justice Rehnquist, writing in dissent and joined by two other justices, had no occasion to discuss the propriety of the District Court's stay order inasmuch as he concluded that the stay order was not appealable.

**12.** *Moses Cone,* 460 U.S. at 15, 103 S.Ct. at 936, quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246, which in turn quoted *Kerotest Mfg. Co.,* 342 U.S. at 183, 72 S.Ct. at 221.

at 943. The facts of the case at bar fall woefully short of meeting this threshold requirement.

EPA brings this action seeking to impose substantial civil penalties under the federal Act for defendant's alleged violations of the SIP. Plaintiff also seeks injunctive relief to compel defendant's compliance. Defendant does not, and cannot, identify what "parallel state-court litigation will be an adequate vehicle" for the resolution of these claims brought by EPA. Indeed, there is no pending litigation whatsoever in state court to which this Court could defer.[13] Nor has it been suggested that EPA could bring an action in state court to obtain the relief it now seeks under the federal Act.

Moreover, the *Colorado River* doctrine is only implicated in "situations involving the contemporaneous exercise of concurrent jurisdiction" by state and federal courts. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. Defendant concedes that what it deems the "parallel state proceedings" have already been concluded.[14] Indeed, defendant argues that the present action involves a wasteful "relitigating [of] issues that have already been resolved in the [state administrative] Consent Order."[15] Thus, it is apparent from defendant's own contentions that the present case is not a situation involving the "contemporaneous exercise of concurrent jurisdiction" to

which the *Colorado River* analysis can be applied.[16]

■ Even if the instant case did concern the contemporaneous exercise of concurrent jurisdiction, defendant's reliance on *Colorado River* would be misplaced. It is clear that EPA has a right to press in this Court at some point its claim that substantial civil penalties should be imposed upon defendant for past violations of the federally adopted SIP.[17] Indeed, defendant argues, in support of its request for a stay during performance under the administrative consent order, that its "adherence to the terms and requirements of the [state] Consent Order would surely weigh heavily in this Court's assessment of whether an additional penalty should be imposed." The need for this Court to ultimately reach the issue of defendant's liability under the federal Act precludes any stay or dismissal under the *Colorado River* doctrine. As the Supreme Court made clear in *Moses Cone*, application of the doctrine "necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case." *Moses Cone*, 460 U.S. at 28, 103 S.Ct. at 943.

Ignoring the absence from the case at bar of the threshold requirements for invocation of the *Colorado River* doctrine, defendant urges the application of that doctrine in order to avoid federal-state friction and the undermining of the state's enforce-

---

**13.** As discussed above, the state agency issued a notice of violation to defendant pursuant to state law. Thereafter, the state and defendant entered the consent agreement. No enforcement action was ever commenced in state court.

**14.** SCM Memo in Support of Motion at 27.

**15.** SCM Memo in Support of Motion at 33.

**16.** The effect of a final decision by one tribunal upon issues or claims subsequently raised in another tribunal is governed by the traditional doctrines of issue and claim preclusion. The preclusive effect of state-court decisions in subsequent federal actions is statutorily defined in 28 U.S.C. §§ 1738–1739.

Defendant does not urge that collateral estoppel is a bar to the instant suit but instead relies

solely upon the *Colorado River* doctrine. SCM Reply Memo at 5–6 n. 5.

**17.** Defendant apparently contests this statement when it asserts in one of its briefs that EPA's seeking in this action penalties over and above those provided for in the state consent order is "not a permissible objective." This contention cannot be supported by logic or the law.

The federal Act provides for civil penalties of up to $25,000 per violation per day. EPA is given authority to seek imposition of such penalties in federal district courts. While the Act clearly contemplates enforcement of some of its provisions by state authorities, there is no suggestion in the statute that enactment by states of their own penalty provisions under state law acts to displace the penalties provided for by Congress.

ment authority. To the extent that defendant's argument is based on general notions of federalism, it is enough to note that such considerations are not part of the *Colorado River* analysis.[18] It was not a generalized concern for comity, but rather the specific language of the McCarran Amendment which was the basis for decision in *Colorado River*[19]. This Court finds no similar expression in the Clean Air Act of a congressional intent to allow state administrative actions to preclude federal enforcement of federal standards.

In support of its contention that the language of the Clean Air Act precludes the bringing of the instant action, defendant leaps from the premise that the Act contemplates state enforcement to the conclusion that state enforcement bars any action by the EPA to enforce federally adopted standards. That conclusion finds no support in logic or the statute.

Congress provided that the EPA may bring actions in the federal courts to enforce federally approved SIP's. Congress further provided for federal civil penalties of up to $25,000 per day of violation. 42 U.S.C. § 7413. This enforcement scheme, and the significant penalties Congress intended to impose upon air polluters, would

be nullified under defendant's view of the law.

According to defendant's analysis, any enforcement action brought by a state agency would preclude federal action to enjoin or punish the same violations. Thus, if a state adopted an SIP which was later federally approved, the state could nullify federal enforcement simply by adopting and using a state enforcement scheme which provided for minimal penalties. This Court does not believe that Congress, in enacting stiff penalties for air pollution, meant to have those penalties subject to nullification by the states.[20]

While the actions of the State of Maryland to enforce clean air standards pursuant to state-law enforcement procedures may properly be taken into account by this Court in determining the appropriateness of the relief prayed by the plaintiff, *United States v. Harford Sands, Inc.*, 575 F.Supp. 733, 735 (D.Md.1983) (Young, J.), such state action does not affect defendant's liability under federal law or preclude this Court from hearing the case on the merits.[21] The Court cannot agree with the defendant that allowing the plaintiff to seek the very penalties imposed by Congress somehow constitutes a "thwarting of federal legislative policy."[22]

18. The *Colorado River* principles which govern in situations involving the contemporaneous exercise of concurrent jurisdictions are "unrelated to considerations of proper constitutional adjudication and regard for federal-state relations." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. See also *Moses Cone, supra*, 460 U.S. at 14–15, 103 S.Ct. at 936–37 (Unlike abstention, the *Colorado River* doctrine does not rest on considerations of state-federal comity.)

19. *Moses Cone*, 460 U.S. at 16, 103 S.Ct. at 937.

20. Defendant relies, in a supplemental memorandum, upon the decision of the Chief Judicial Officer of the EPA in *In the Matter of BKK Corporation*, Docket No. IX–84–0012 (May 10, 1985), in support of defendant's contention that state enforcement precludes subsequent EPA enforcement. The Court notes, without need for discussing the precedential value of that administrative decision, that *BKK* did not involve application of the *Colorado River* doctrine. The federal statute involved in *BKK*, moreover, was

the Resource Conservation and Recovery Act, 42 U.S.C. § 6928, which expressly provides that state programs which are substantially equivalent to federal programs shall be authorized to be conducted "in lieu of the Federal program" on an interim basis. Such authorization to conduct the state program in lieu of the federal program had been granted by the EPA in the *BKK* case.

21. In the briefing on the instant motion, both sides have presented extensive arguments concerning the sufficiency of the state consent order to remedy the violations alleged. In light of the conclusions reached herein regarding the inapplicability of the *Colorado River* doctrine, the Court believes that the nature and extent of state administrative action are issues going to the merits of this action which need not be addressed at this juncture.

22. See Defendant's Memorandum in Support of SCM's Motion to Dismiss or Stay Proceedings at 31.

Nor is there any unfairness to the defendant in the Court's decision that this case may proceed despite defendant's entering into a consent order with the state agency. In a federal system, each person and entity is subject to simultaneous regulation by state and national authority. The single act of an individual frequently subjects that person to separate and differing legal consequences at the hands of state and national sovereigns. That the same acts by the defendant subject it to state actions under Title 2 of the Maryland Health and Environmental Code as well as EPA actions under the Clean Air Act is no more anomolous than the situation of the bank robber who finds himself simultaneously prosecuted for violations of both federal and state laws arising from a single criminal act. The defendant in this case, moreover, was fully aware of the federal violation notices at the time it decided to enter a consent agreement with the state agency. Defendant and the state agency were also aware, prior to the execution of the consent order, that the EPA did not consider the proposed order a satisfactory remedy for the violations alleged.[23]

For all of these reasons, the Court concludes that neither a stay nor a dismissal of this action is warranted under the *Colorado River* doctrine.[24]

Accordingly, defendant's motion will be denied.

---

**23.** See defendant's memorandum in support of its motion to dismiss or to stay at p. 23.

**24.** To the extent that the rationale of *United States v. Cargill, Inc.,* 508 F.Supp. 734 (D.Del. 1981), would recommend a different result, that case will not be followed.