32 F.3d 491
 39 ERC 1379, 24 Envtl. L. Rep. 21,359
 Judith M. ESPINOSA, in her official capacity as Secretary of
the New Mexico Environment Department; New Mexico
Environment Department, Plaintiffs-Appellants,
v.
ROSWELL TOWER, INC.; Ray Bell; Leonard Talbert,
Defendants-Appellees.
 No. 93-2238.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 17, 1994.
 
 Ripley B. Harwood (Geoffrey Sloan with him on the briefs), Sp. Asst. Atty. Gen., Assts. General Counsel, Santa Fe, NM, for plaintiffs-appellants.
 Bruce S. Garber of Garber and Hallmark, Santa Fe, NM (Timothy J. Cusack of Cusack, Jaramillo & Associates, Roswell, NM, with him on the brief), for defendants-appellees.
 Before SEYMOUR, Chief Judge, LOGAN, Circuit Judge, and DAUGHERTY, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 The New Mexico Environmental Department and its Secretary, Judith M. Espinosa (collectively NMED), brought suit against Roswell Tower, Inc., Ray Bell and Leonard Talbert (defendants) alleging violations of the Clean Air Act, 42 U.S.C. Secs. 7401 et seq.[1] The district court granted summary judgment for defendants; NMED appeals. The only issue on appeal is whether NMED can invoke federal jurisdiction to seek federal penalties under the Clean Air Act after having prevailed in a state enforcement suit.
 
 
 2
 In 1991, NMED filed suit against these defendants in state court, alleging violations of the New Mexico Environmental Improvement Act, N.M.Stat.Ann. Secs. 74-1-1 through 74-1-10. The state court entered judgment against defendants; an appeal is pending. NMED then filed suit in federal district court seeking damages for the same conduct under the Clean Air Act, and requesting that the district court recognize the state court judgment. The district court dismissed the suit, holding that although NMED could file suit under 42 U.S.C. Sec. 7412 in federal court to enforce the state emission standards, it could not seek the federal penalties provided by 42 U.S.C. Sec. 7413. The court then found that claim preclusion prevented NMED from bringing a federal suit.
 
 
 3
 The Clean Air Act establishes dual responsibilities of the states and federal government for prevention and control of air pollution. The Act requires the Environmental Protection Agency (EPA) to set air quality standards, and allows each state to establish a state implementation plan (SIP) to implement and maintain those standards. 42 U.S.C. Secs. 7409, 7410. The EPA has authority to accept or reject a proposed SIP, and may establish an implementation plan for states that do not submit a SIP that meets the Clean Air Act standards. Id. Sec. 7410(c). The state implementation plan has the force and effect of federal law, thereby permitting the Administrator to enforce it in federal court. Id. Sec. 7413(a) and (b).
 
 
 4
 In this case the New Mexico SIP was approved by the EPA. NMED argues that Sec. 7412(d) provides for broad delegation of authority to states with SIPs to institute federal enforcement actions under Sec. 7413(b). Section 7412(d) provides:
 
 
 5
 (d) State implementation and enforcement
 
 
 6
 (1) Each State may develop and submit to the Administrator a procedure for implementing and enforcing emission standards for hazardous air pollutants for stationary sources located in such State. If the Administrator finds the State procedure is adequate, he shall delegate to such State any authority he has under this chapter to implement and enforce such standards.
 
 
 7
 (2) Nothing in this subsection shall prohibit the Administrator from enforcing any applicable emission standard under this section.
 
 
 8
 We read this language as delegating to the states with approved SIPs the primary responsibility to enforce the standards as manifested in that SIP. Admittedly the delegation language is broad, but Sec. 7412(d) by its terms provides that the SIP include state enforcement provisions. The delegation of federal authority, we hold, is limited to state enforcement of the federally-approved SIP through the state administrative and judicial process, see EPA v. AM General Corp., 808 F.Supp. 1353, 1358 (N.D.Ind.1992), or possibly through citizens' suits pursuant to Sec. 7604. See Union Elec. Co. v. EPA, 515 F.2d 206, 211 (8th Cir.1975), aff'd, 427 U.S. 246, 96 S.Ct. 2518, 49 L.Ed.2d 474 (1976). The Administrator retains authority to enforce the SIP in federal court, acting as a supervisor to insure that the federal standards are met. See United States v. Continental Group, U.S.A., 595 F.Supp. 1021, 1023 (E.D.Wis.1984).
 
 
 9
 This reading of Sec. 7412(d) is consistent with the language of Sec. 7413(a) and (b) which states in part:
 
 
 10
 (a) Finding of violation; notice; compliance order; civil action; State failure to enforce plan; construction or modification of major stationary sources
 
 
 11
 (1) Whenever, on the basis of any information available to him, the Administrator finds that any person is in violation of any requirement of an applicable implementation plan, the Administrator shall notify the person in violation of the plan and the State in which the plan applies of such finding. If such violation extends beyond the 30th day after the date of the Administrator's notification, the Administrator may issue an order requiring such person to comply with the requirements of such plan or he may bring a civil action in accordance with subsection (b) of this section.
 
 
 12
 (2) Whenever, on the basis of information available to him, the Administrator finds that violations of an applicable implementation plan are so widespread that such violations appear to result from a failure of the State in which the plan applies to enforce the plan effectively, he shall so notify the State. If the Administrator finds such failure extends beyond the 30th day after such notice, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Administrator that it will enforce such plan (hereafter referred to in this section as "period of federally assumed enforcement"), the Administrator may enforce any requirement of such plan with respect to any person--
 
 
 13
 ....
 
 
 14
 (B) By bringing a civil action under subsection (b) of this section.
 
 
 15
 ....
 
 
 16
 (b) Violations by owners or operators of major stationary sources
 
 
 17
 The Administrator shall, in the case of any person which is the owner or operator of a major stationary source, and may, in the case of any other person, commence a civil action for a permanent or temporary injunction, or to assess and recover a civil penalty of not more than $25,000 per day of violation, or both, whenever such person--
 
 
 18
 ....
 
 
 19
 The Administrator may commence a civil action for recovery of any noncompliance penalty under section 7420 of this title or for recovery of any nonpayment penalty for which any person is liable under section 7420 of this title or for both.
 
 
 20
 Section 7413 contains the procedural prerequisites before the Administrator may file suit. There is no language in the Act that authorizes a state to bring a federal enforcement action. Rather, Sec. 7413 is essentially a default provision providing that the Administrator will enforce the SIP when a state fails to do so. Cf. United States v. Louisiana-Pacific Corp., 682 F.Supp. 1122, 1128 (D.Colo.1987) (acknowledging that notice of violation is prerequisite to EPA enforcement suit under Sec. 7413(b)). The EPA approval of the New Mexico SIP provides for the Administrator to exercise "concurrent" authority with the state. Appellants' App. at 40-46.
 
 
 21
 Section 7420 reflects similarly redundant procedures for the imposition of noncompliance penalties. States have the opportunity to develop a plan (for approval by the Administrator) for the assessment and collection of penalties; but the Administrator may assess the penalty if a State fails to do so.[2] 42 U.S.C. Sec. 7420(a)(1); 7420(b)(1) and (b)(2). These provisions, along with the SIP enforcement mechanism, underscore the dual enforcement approach with the state government having primary control and federal action serving as an enforcement safety net. Train v. Natural Resources Defense Council, 421 U.S. 60, 64, 95 S.Ct. 1470, 1474-75, 43 L.Ed.2d 731 (1975).
 
 
 22
 Finally, our reading of Secs. 7412 and 7413 also is consistent with Sec. 7416 which explicitly provides that state regulation of air pollution is preempted only insofar as any state regulation is less stringent than the SIP or the standard under Secs. 7411 or 7412. Thus, a state may have other more restrictive air quality regulations that are not based on EPA standards.
 
 
 23
 The few cases that have discussed the relationship of the state, federal and private enforcement process acknowledge the availability of jurisdictionally independent enforcement actions. See Union Elec., 515 F.2d at 211 (utility company petitioned for review of emission standard in SIP; dismissed for lack of jurisdiction after extensive discussion of Clean Air Act procedures); United States v. Ford Motor Co., 736 F.Supp. 1539, 1549-51 (W.D.Mo.1990) (in dispute whether SIP or a manufacturer's state-approved alternative compliance plan is binding upon manufacturer, court noted that the Clean Air Act provided for independent federal enforcement, even if state had concluded manufacturer was in compliance with a SIP or the alternative compliance plan); United States v. SCM Corp., 615 F.Supp. 411, 414-20 (D.Md.1985) (refusing to dismiss or stay a federal enforcement action because of administrative consent order entered into after federal notice of violation issued).
 
 
 24
 Only one court has concluded that the Clean Air Act intended the states to bring enforcement actions in federal courts under Sec. 7412. Alabama ex rel. Graddick v. Veterans Admin., 648 F.Supp. 1208 (M.D.Ala.1986). Graddick ruled that the Alabama Department of Environmental Management "cannot be said to be attempting to enforce state regulations without also being found to be enforcing federal regulations." Id. at 1211. We reject that analysis; it would seem to permit an unsuccessful federal action brought by a state to foreclose the Administrator from filing suit under the Clean Air Act.
 
 
 25
 We hold that NMED may not bring an enforcement action in federal court under the Clean Air Act when it has previously brought a state court enforcement action for the same violation. For the reasons stated, we AFFIRM.
 
 
 
 *
 The Honorable Frederick A. Daugherty, Senior United States District Judge, United States District Court for the Western District of Oklahoma, sitting by designation
 
 
 [1]
 We refer to the sections of the Clean Air Act in effect at the time these alleged violations occurred. The 1990 amendments changed some of the sections we refer to; Sec. 7412(d) was amended at that time and renumbered as Sec. 7412(l )
 
 
 [2]
 We need not address whether a state action, regardless of the outcome, could be followed by a federal action for the same violation