CHASE BREXTON HEALTH SERVICES, INCORPORATED; Choptank Community Health System, Incorporated; Community Clinic, Incorporated; Park West Health System, Incorporated; People's Community Health Center, Incorporated; Three Lower Counties Community Health Services, Incorporated; Total Health Care, Incorporated, Plaintiffs–Appellants,

v.

The State of MARYLAND, Department of Health and Mental Hygiene, Defendant–Appellee,

and

Nelson Sabatini, Secretary, State of Maryland Department of Health and Mental Hygiene, Defendant.

No. 04–1710.

United States Court of Appeals, Fourth Circuit.

Argued March 17, 2005.

Decided June 9, 2005.

**ARGUED:** James Leo Feldesman, Feldesman Tucker Leifer Fidell, L.L.P., Washington, D.C., for Appellants. Joel Lewis Tornari, Office of the Attorney General of Maryland, Department of Health & Mental Hygiene, Baltimore, Maryland, for Appellee. **ON BRIEF:** Kathy S. Ghiladi, Feldesman Tucker Leifer Fidell, L.L.P., Washington, D.C., for Appellants. J. Joseph Curran, Jr., Attorney General of Maryland, Elizabeth M. Kameen, Assistant Attorney General, Baltimore, Maryland, for Appellee.

Before WILKINS, Chief Judge, NIEMEYER, Circuit Judge, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Vacated and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Chief Judge WILKINS and Judge WILSON joined.

## OPINION

NIEMEYER, Circuit Judge.

Seven healthcare providers commenced this action under 42 U.S.C. § 1983 against the Secretary of the Maryland Department of Health and Mental Hygiene, challenging Maryland's method for reimbursing plaintiffs under Maryland's Medicaid plan on the basis that the method violated the federal Medicaid law. They seek a declaratory judgment and injunctive relief.

Invoking the abstention doctrine in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the district court stayed this action in favor of related and pending Maryland administrative proceedings involving two of the healthcare providers and other related Maryland administrative proceedings commenced after this action was commenced.

Because we conclude that this action does not meet the criteria for *Colorado River* abstention, we vacate the district court's stay order and remand for further proceedings.

### I

Chase Brexton Health Services, Inc.; Choptank Community Health System, Inc.; Community Clinic, Inc.; Park West Health System, Inc.; People's Community Health Center, Inc.; Three Lower Counties Community Health Services, Inc.; and Total Health Care, Inc. are healthcare providers that have qualified under the Medicaid program to provide healthcare services to low-income individuals in Maryland in exchange for reimbursement from Medicaid funds. The Medicaid program is a cooperative federal-state program through which the United States provides financial assistance to participating States to enable them to pay for healthcare services rendered to those otherwise unable to afford

healthcare. States electing to participate in the program must comply with requirements imposed by federal law and have an approved "State Medicaid plan," under which qualified healthcare providers are reimbursed for the services they render. *See* 42 U.S.C. § 1396a(a).

The methods for reimbursement provided by federal law have changed over the years. Between 1989 and 1997, the federal Medicaid law required States to reimburse qualified healthcare providers for "100 percent of costs which are reasonable and related to the cost of furnishing such services or based on such other tests of reasonableness as the Secretary prescribes in regulations." Pub.L. No. 101–239, § 6404(a), (c), 103 Stat. 2106, 2264 (1989) (originally codified as 42 U.S.C. § 1396a(a)(13)(E)). From 1997 until 2000, the federal Medicaid law required States to reimburse qualified healthcare providers for "100 percent (or 95 percent for services furnished during fiscal year 2000 . . . ) of costs which are reasonable and related to the cost of furnishing such services or based on such other tests of reasonableness as the Secretary prescribes in regulations." Pub.L. No. 105–33, § 4712(a), 111 Stat. 251, 508 (1997) (originally codified as 42 U.S.C. § 1396a(a)(13)(C)). Finally, at the end of 2000, Congress amended federal law to require States to implement *prospective* payment systems for funding qualified healthcare providers. The prospective payments prescribed, however, are based on a "reasonable cost" reimbursement requirement similar to the requirements previously applied. The reasonable cost requirement instructs States to start with a base amount equal to "an amount (calculated on a per visit basis) that is equal to 100 percent of the average of the costs of the center or clinic of furnishing such services during fiscal years 1999 and 2000 which are reasonable and related to the cost of furnishing such services, or based on such other tests of reasonableness as the Secretary prescribes in regulations." Pub.L. No. 106–554, § 1(a)(6), 114 Stat. 2763, 2763, 2763A–572–73 (2000) (currently codified as 42 U.S.C. § 1396a(bb)(2)). For every year after 2001, the reimbursement level increases from that base amount by a predetermined percentage. 42 U.S.C. § 1396a(bb)(3).

In June 2000, People's Community Health Center, Inc. and Community Clinics, Inc., two of the appellants in this case, filed administrative appeals with the Maryland Department of Health and Mental Hygiene ("Maryland Department of Health"), disputing Maryland's determination of their reimbursement amounts for their fiscal years 1996–1998. These two healthcare providers contended that an administrative cap and a rate ceiling imposed by Maryland violated the federal law that required the reimbursement of *all* of the healthcare providers' reasonable costs. A Maryland administrative law judge conducted a hearing on the two appeals and, on March 24, 2003, issued a proposed order concluding that "Maryland's regulation providing for an administrative cap, as applied[,] conflicted with Federal law and [was] arbitrary and capricious" but that the evidence was insufficient to conclude that the rate ceiling was illegal. The Maryland Department of Health filed exceptions to the proposed order in April 2003, and, the Secretary of the Maryland Department of Health has, as counsel for Maryland have informally advised the court, issued a final decision reversing the administrative law judge. The Secretary's decision is now before the Maryland Board of Review, which, according to counsel for Maryland, is the "last stop" in the Maryland administrative process before appellants are given access to Maryland courts.

While the appeals of the two healthcare providers were pending before the Maryland Department of Health, the seven healthcare providers named above commenced this action on May 27, 2003, against the Maryland Department of Health and Nelson J. Sabatini in his official capacity as Secretary of the Maryland Department of Health. The seven healthcare providers requested: (1) an injunction requiring the Maryland Department of Health to implement the "prospective payment system" required by Congress in 2000; (2) a declaration that the Maryland Department of Health's use of the administrative cap and rate ceiling before enactment of the prospective payment system at the end of 2000 violated the reasonable cost requirements of federal law; (3) an injunction prohibiting the Maryland Department of Health from using the administrative cap and rate ceiling in reaching a final settlement for the years 1999 and 2000; and (4) an injunction prohibiting the Maryland Department of Health from using the administrative cap and rate ceiling in calculating the per-visit rates for 1999 and 2000 that are to be used in setting the prospective payment rates for the years after 2000.

After this action was commenced and while it was pending, the Maryland Department of Health determined the prospective payment rates for each qualified healthcare provider, and the seven healthcare providers in this case appealed those determinations administratively, contending that those rates also violated federal law because they incorporated an administrative cap and rate ceiling in the calculations of the base 1999 and 2000 rates. Counsel for Maryland have informally advised this court that an administrative law judge has held a hearing on those appeals and issued a proposed order upholding the prospective rate determinations made by the Maryland Department of Health. That order remains pending within the state administrative process.

In this action, upon Maryland's motion to dismiss or for summary judgment, the district court dismissed the healthcare providers' claims against the Maryland Department of Health on sovereign immunity grounds, leaving the providers' claims pending against the Secretary of the Maryland Department of Health. The district court also dismissed the healthcare providers' first claim—that the Maryland Department of Health failed to implement a prospective payment system—because, as of the time the court considered the motion, the Maryland Department of Health had established such a system. With respect to the healthcare providers' second claim—that the administrative cap and rate ceiling applied by the Maryland Department of Health violated federal law—the district court stayed the proceedings pending the outcome of state administrative proceedings, relying on *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

The healthcare providers appeal only the district court's stay order.

II

■ In applying *Colorado River* abstention to stay the proceedings in this case, the district court considered as parallel state proceedings not only the two administrative appeals filed *before* the commencement of this action but also the administrative appeals filed *after* because it concluded that the issue to be decided in the administrative appeals and in this action was the same. The court observed, "[b]ecause of issue and claim preclusion principles, it may be that only one forum can decide this question (that is, the forum that decides first)." The court reasoned

that "proceeding to the merits of this claim would mean that at least one tribunal's adjudicative resources would be unnecessarily squandered." The court reasoned in the alternative that if different issues were being adjudicated in the administrative proceedings and in this action based on differing constructions of "reasonableness" as used in the various versions of the Medicaid law, the resulting " 'piecemeal' uncertainty" would become "precisely" the kind of problem that *Colorado River* sought to avoid.

The healthcare providers contend that the district court misapplied *Colorado River* and that the factors and policies governing *Colorado River* abstention do not "fit the facts in this case." They argue that the district court overlooked altogether the strong presumption that "the statutory rights of Medicaid beneficiaries and others who participate in the program (such as health care providers) are enforceable in the federal courts," citing to 42 U.S.C. § 1320a–2, and that *Colorado River* abstention is a narrow and limited exception to a federal court's obligation to exercise its jurisdiction.

■ We begin by recognizing the general rule that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other. "Despite what

may appear to result in a duplication of judicial resources, '[t]he rule is well recognized that the pendency of an action in the state [system] is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' " *McLaughlin v. United Va. Bank,* 955 F.2d 930, 934 (4th Cir.1992) (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)).

■ In addition, we recognize the general rule that federal courts are bound by a "virtually unflagging obligation … to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236. Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not." *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821). But this duty is not absolute. In certain limited instances, "federal courts may decline to exercise their jurisdiction, in otherwise 'exceptional circumstances,' where denying a federal forum would clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236). These "exceptional circumstances" inevitably relate to a policy of avoiding unnecessary constitutional decisions and of accommodating federal-state relations.[1]

---

**1.** Thus, for example, the Supreme Court has held that federal courts have the power to refrain from hearing: (1) cases that would interfere with a pending state criminal proceeding, *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or with certain types of state civil proceedings, *see Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); (2) cases in which the resolution of a federal constitutional question might be mooted if the state courts were given the opportunity to interpret ambiguous state law, *see R.R. Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); (3) cases raising issues

"intimately involved with [the States'] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law, *see La. Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); (4) cases whose resolution might interfere with state schemes for the collection of taxes, *see Great Lakes Dredge and Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); and (5) cases involving complex state administrative procedures, *see Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

■ Quite apart from the important policies underlying traditional grounds for abstention, *Colorado River*, solely as a matter of judicial administration, permits dismissal of a *duplicative* federal action when "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" clearly favors abstention. 424 U.S. at 817, 96 S.Ct. 1236 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (internal quotation marks omitted)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *McLaughlin,* 955 F.2d at 935. Because *Colorado River* abstention does not rest on the weightier concerns of proper constitutional adjudication and federal-state relations, the Supreme Court has admonished that it be applied parsimoniously. As the Court explained:

> Given [the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them], and the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are *considerably more limited than the circumstances appropriate for abstention.* The former circumstances, though exceptional, do nevertheless exist.

424 U.S. at 818, 96 S.Ct. 1236 (emphasis added).

■ At bottom, in assessing whether *Colorado River* abstention is appropriate, a district court must remain mindful that this form of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" and that "[a]bdication of the obligation to decide cases can be justified under [abstention] only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236 (quoting *Allegheny County v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)) (internal quotation marks omitted). As such, our task "is not to find some substantial reason for the *exercise* of jurisdiction by the district court; rather, our task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the *surrender* of that jurisdiction." *Moses H. Cone,* 460 U.S. at 25–26, 103 S.Ct. 927.

■ The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel federal and state suits.[2] *See New Beckley Mining Corp. v. Int'l Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991). If parallel suits exist, then a district court must carefully balance several factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. 927. Although the prescribed analysis is not a "hard-and-fast" one in which application of a "checklist" dictates the outcome, six factors have been identified to guide the analysis: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litiga-

---

**2.** For this purpose, administrative proceedings, when adjudicative in nature, are considered state suits. *See Martin Marietta Corp. v. Md. Comm'n on Human Relations,* 38 F.3d 1392, 1396 (4th Cir.1994).

tion; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Id.* at 15–16, 19–27, 103 S.Ct. 927; *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236; *McLaughlin*, 955 F.2d at 934–35. In the end, however, abstention should be the exception, not the rule, and it may be considered only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927.

■ Because any such decision to abstain falls within a district court's discretion, we review the decision for abuse of discretion. *Al–Abood v. El–Shamari*, 217 F.3d 225, 232 (4th Cir.2000).

Addressing first whether the present action is parallel to the state proceedings, we believe that the district court acted at too general a level and tended, when in doubt, to favor abstention, an approach that violated the principles noted above.

The state proceedings pending when this action was commenced involved two state administrative appeals by two of the healthcare providers in this case, challenging the amount of the reimbursement determined by the Maryland Department of Health for the fiscal years 1996–1998. This action, in contrast, involves the claims of seven healthcare providers—including the two that were parties to the administrative appeals—challenging reimbursement methods not only for 1996–1998, but also for the other years before January 1, 2001, as well as for the years after January 1, 2001, when the Maryland Department of Health switched to a prospective payment system.

Discounting the differences between the administrative appeals and this case, the district court noted that the parties and issues in *Colorado River* itself were not identical to the "parallel" state-court proceeding and, as such, concluded for this case that "the commonalities between adjudications sufficiently outweigh[ed] the differences."

■ While the district court correctly noted that the parties in *Colorado River* were not identical to the parties in the "parallel" state action, the district court failed to recognize that in *Colorado River* at least the federal plaintiff was a party to the state action. 424 U.S. at 805–06, 96 S.Ct. 1236. In this case, five of the federal plaintiffs were *not* involved in the pending administrative appeals. Accordingly, to abstain in favor of those state administrative appeals would deprive five healthcare providers of the opportunity to litigate their claims. Moreover, we have strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley*, 946 F.2d at 1073.

In addition to the lack of similarity of parties, the scope of the plaintiffs' claims are not parallel. The two healthcare providers that are parties to the administrative appeals challenged their reimbursement levels only for the fiscal years 1996–1998. While their federal-court challenges based on later years might involve similar issues, these challenges will also entail additional and distinct issues because of the intervening change in the Medicaid law. Specifically, the first administrative challenge will determine only whether the administrative cap and rate ceilings violated the requirement that the Maryland Department of Health reimburse "100 per-

cent ... of costs which are reasonable," 42 U.S.C. § 1396a(a)(13)(C) (1998), whereas the federal challenge will also have to determine whether the administrative cap and rate ceiling violated the requirement that the Maryland Department of Health base its prospective payment system on "an amount ... that is equal to 100 percent of the average of the costs of the center ... during fiscal years 1999 and 2000," 42 U.S.C. § 1396a(bb)(2) (2005). In addition, the administrative law judge's method of determining whether the administrative cap and rate ceiling violated federal law demonstrates that factual differences among the challenged years could well have a significant effect on whether the administrative cap and rate ceiling violated federal law. Specifically, the administrative law judge found that the Maryland Department of Health's method of calculating reimbursement levels did not facially violate federal law but that during the challenged years, the cap and ceiling resulted in less than 100% reimbursement of reasonable costs.

In *New Beckley,* we held that the state and federal actions, although "virtually identical," were not parallel because the remedies sought and the issues raised were not the same. 946 F.2d at 1074. In so holding, we concluded that " '[t]he *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals.' " *Id.* (quoting *United States v. SCM Corp.,* 615 F.Supp. 411, 417 (D.Md.1985)). Consistent with this view, we conclude that the district court incorrectly determined that the commonality of a legal issue outweighed the differences between the pending state administrative proceedings and this action.

With respect to the administrative appeals filed by the healthcare providers *after* this action was commenced, the district court opted to abstain in favor of those proceedings because (1) there was a likelihood that the federal and state proceedings would result in "disjointed or unreconcilable results," and (2) significant progress had already been made in the state administrative proceedings. Even without considering the important countervailing factors that (1) the administrative proceedings were begun *after* the commencement of this action and (2) this action was filed to resolve federal, not state, law, we are not persuaded that the two factors identified by the district court are sufficiently weighty to overcome the strong presumption in favor of its retaining federal jurisdiction. This becomes yet more clear when we apply all of the factors given in *Colorado River* and *Moses H. Cone* for the analysis.

Consideration of the *first* and *second* factors—whether the subject matter of the state litigation involves a *res* or whether the federal forum is an inconvenient one—does not provide any support for abstention.

With respect to the *third* factor—the desirability of avoiding piecemeal litigation—the district court found that the two adjudications might end with "disjointed or unreconcilable results." But this is not the threat of piecemeal litigation with which *Colorado River* was concerned; it is a prospect inherent in all concurrent litigation. And the Supreme Court in *Colorado River* has instructed federal courts that they are normally to accept jurisdiction even in the face of concurrent state litigation. 424 U.S. at 817, 96 S.Ct. 1236. The "mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." *Id.* at 816, 96 S.Ct. 1236. The

threat of piecemeal litigation in the sense that two cases proceed simultaneously thus is not sufficient to support a decision to abstain under *Colorado River.*

The *fourth* factor—the order in which jurisdiction was obtained by the courts—counsels against abstention since the healthcare providers filed their federal claim *before* they filed their administrative appeals. Moreover, at the time of the district court's order, the administrative appeals had not even proceeded to a hearing. Thus, both the relative progress of the proceedings and the order of filings weigh decidedly against abstention.

The *fifth* factor—whether the source of law is federal or state—strongly counsels in favor of the district court's exercising jurisdiction. The healthcare providers in this case contend that the Maryland Department of Health's reimbursement methods violated federal Medicaid law, and that law expressly provides federal jurisdiction to resolve disputes under the law. *See* 42 U.S.C. § 1320a–2. Indeed, the present proceedings raise no substantial issue of state law.

The *sixth* factor—whether the state proceeding will adequately protect the rights of the parties seeking to invoke federal jurisdiction—also weighs against abstention. The district court was well aware of the slow pace of the state administrative proceedings and, based on the record before it, the district court had no reason to assume that the administrative proceedings were an adequate vehicle for the "prompt resolution" of the claims. *See Moses H. Cone,* 460 U.S. at 28, 103 S.Ct. 927. The healthcare providers also raise a legitimate question about whether a state administrative agency reviewing a reimbursement claim can provide the full relief that the healthcare providers are requesting in this action. Counsel for Maryland were unable to assure us at oral argument

that a state administrative law judge has the power to declare that the law under which it operates violates federal law or to issue injunctions against the Secretary of the Maryland Department of Health.

In tallying the relevant factors and considering them against the larger policies underlying *Colorado River* abstention, we cannot conclude that this case presents the "exceptional circumstances" that justify a federal court's surrendering its jurisdiction in favor of state administrative proceedings.

### III

In support of the district court's stay order, Maryland argues additionally that the district court possessed even broader discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to stay an action and that its order staying this action can be justified as a proper exercise of that discretion. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

■ It is true that the granting of declaratory relief is entrusted to the discretion of the district court. Section 2201 explicitly provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." (Emphasis added). But when a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay would not save any judicial resources. The claims in this case for which declaratory relief is requested and those for which injunctive relief is requested are so closely intertwined that judicial economy counsels against dismiss-

ing the claims for declaratory judgment relief while adjudicating the claims for injunctive relief. Accordingly, we reject Maryland's additional argument.

## IV

For all of the reasons given, we conclude that the district court abused its discretion in staying the proceedings in this case under the *Colorado River* abstention doctrine, pending the outcome of state administrative proceedings. Accordingly, we vacate the district court's abstention order and remand for further proceedings.

*VACATED AND REMANDED*