Tucker W. McLAUGHLIN,
Plaintiff–Appellant,

v.

UNITED VIRGINIA BANK,
Defendant–Appellee,

and

Miners & Merchants Bank & Trust Company; Grundy National Bank; Crestar Bank, Defendants.

No. 91–1568.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 30, 1991.

Decided Feb. 4, 1992.

As Amended Feb. 12, 1992.

Wyatt B. Durrette, Jr., Durrette, Irvin, Lemons & Fenderson, P.C., Richmond, Va., argued (Lucy H. Allen, Richmond, Va., Timothy W. Hudson, Slaughter, Hudson & Daugherty, Bristol, Tenn., on brief), for plaintiff-appellant.

Samuel James Thompson, Jr., Caskie & Frost, Lynchburg, Va., argued (Leighton S. Houck, and Joy Lee Price, on brief), for defendant-appellee.

Before HALL and NIEMEYER, Circuit Judges, and HARVEY, Senior District Judge for the District of Maryland, sitting by designation.

## OPINION

NIEMEYER, Circuit Judge:

■ We are presented with the frequently raised question of when may a federal district court surrender its jurisdiction in deference to a parallel state court proceeding. While the general rule provides that the pendency of a state court action is not a basis to bar similar proceedings in a federal court having jurisdiction and that federal courts must hear cases within their jurisdiction, in extraordinary and exceptional circumstances a district court may stay its hand or refuse jurisdiction. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In order to qualify for the application of the *Colorado River* doctrine, however, the federal case must duplicate pending state proceedings, and because this case does not, we reverse the decision of the district court to dismiss the federal suit.

## I

Tucker W. McLaughlin, a resident of South Carolina, is the president and sole shareholder of Southside Oil Company, Inc., a Virginia corporation, which wholly owns Tazewell Oil Company, Inc., and Cardinal Fuels, Inc., also Virginia corporations. McLaughlin is president of those corporations as well. In McLaughlin's words, all of these businesses were "very much interrelated, lending large sums of money to each other and owning parts of each other ... it was all one ball of wax."

United Virginia Bank made loans to Southside Oil and its subsidiaries from early 1981 through mid–1984. Southside Oil, Tazewell Oil, and Cardinal Fuels provided collateral for the loans, and McLaughlin personally guaranteed their repayment. Eventually, McLaughlin's corporations began to overdraw their accounts with United Virginia and the bank demanded and received more collateral. When McLaughlin continued to exceed the limits of his funds, United Virginia determined in May 1984 that it would no longer honor checks drawn on the corporations' accounts and it obtained a demand note secured and guaranteed by McLaughlin to cover the overdraft balance. During this period, United Virginia is alleged to have released to potential buyers of McLaughlin's corporations confidential information about McLaughlin and his corporations which intimated that McLaughlin was financially unsound. McLaughlin has claimed that this release of information damaged him and his corporations.

Earlier, in 1983, Miners & Merchants Bank also made loans to Cardinal Fuels. These loans were secured by Cardinal Fuels' accounts and were, again, personally guaranteed by McLaughlin. Upon learning of McLaughlin's difficulties with United Virginia, Miners & Merchants demanded and received more collateral to secure its loans. Cardinal Fuels pledged Tazewell Oil's equipment and other assets. Among other things, Miners & Merchants notified Grundy National Bank that it held a lien on McLaughlin's funds which were deposited in Grundy National. As a result of this notification, Grundy National refused to honor checks drawn on McLaughlin's Grundy National accounts.

McLaughlin has alleged that the improper actions of the three banks during these times effectively denied him access to funds, causing Tazewell Oil to go out of business and causing McLaughlin and his other corporations to suffer serious financial losses.

Numerous law suits, not all of which are described below, arose from these transactions:

1. On June 3, 1985, United Virginia brought suit in a Virginia state court (Buchanan County) for an injunction against Tazewell Oil and its operating agent because United Virginia expected that Tazewell Oil might go out of business and so impair United Virginia's security interest in Tazewell Oil's inventory.

2. On September 10, 1985, Tazewell Oil brought suit in state court (City of Richmond) against United Virginia, Merchants & Miners, and Grundy National, for damages. This suit was transferred to Buchanan County and consolidated with other cases there. These consolidated cases went to trial in April and May 1988 and, at the close of evidence, the claims against Merchants & Miners and Grundy National were settled. A tortious interference claim and conspiracy claim (both against United Virginia) went to the jury which rendered a verdict for Tazewell. Issues from this consolidated action are presently on appeal to the Virginia Supreme Court.

3. On March 26, 1986, McLaughlin, his wife and other individuals brought suit in state court (Buchanan County) against all three banks, alleging breach of contract, unreasonable handling of collateral, tortious interference with contract, and intentional infliction of emotional distress. This suit was one of those consolidated and tried with the other cases pending in Buchanan County. McLaughlin settled his personal claims against Merchants & Miners and Grundy National. In an order agreed to by McLaughlin

and United Virginia, the court granted "judgment in favor of [United Virginia] without prejudice, however, to the claims asserted by Tucker W. McLaughlin" in the present federal action. McLaughlin points out that the breach of contract claims addressed in this state suit are different from those presented in the federal suit pending before us.

4. On December 31, 1986, United Virginia brought suit in state court (Buchanan County) against McLaughlin and several of his corporations to recover on various notes and guarantees. The defendants filed a counterclaim alleging that United Virginia mishandled the collateral and incorporating the other charges made against the Bank in the suit previously filed on March 26. This suit was one of those consolidated and tried with the other cases pending in Buchanan County. The judge later set aside the award of damages allegedly caused by United Virginia's "mishandling of the collateral" because he gave an improper jury instruction. This case is scheduled for a new trial.

5. On May 14, 1987, Cardinal Fuels brought suit in state court (Buchanan County) against United Virginia, alleging tortious interference in Cardinal's contractual relationship with Miners & Merchants. Although this suit was consolidated with the others in Buchanan County, it was later voluntarily dismissed in favor of a new case filed on October 21, 1988.

6. Also on May 14, 1987, Tazewell Oil and Cardinal Fuels filed a separate action in state court (Buchanan County) against United Virginia, alleging conversion, breach of fiduciary duty, and malicious prosecution. This suit was one of those consolidated and tried in Buchanan County.

7. On June 2, 1987, Cardinal Fuels brought suit in state court (Buchanan County) against all three banks, alleging damages for conspiracy and breach of fiduciary duty. This suit was settled with Miners & Merchants and Grundy National and voluntarily dismissed as to

United Virginia in favor of a new case filed on October 21, 1988.

8. On June 4, 1987, McLaughlin brought *this action* in federal court (Eastern District of Virginia in Richmond) against all three banks alleging common law conspiracy, statutory conspiracy, breach of contract, breach of implied contract, breach of fiduciary duty, and tortious interference with contract. This suit was later transferred to the Western District of Virginia in Abingdon as a more convenient forum.

9. On July 25, 1988, United Virginia brought suit in state court (Buchanan County) against McLaughlin, asking for a declaratory judgment to determine the status of certain notes and collateral then held by United Virginia. This suit is apparently consolidated with the December 31, 1986 collection suit, which is scheduled for retrial.

10. On October 21, 1988, Cardinal brought suit against Crestar Bank (the successor to United Virginia) in state court (Buchanan County) alleging conspiracy, tortious interference with a letter agreement, breach of contract, and malicious prosecution. This suit is ongoing.

11. On June 1, 1990, McLaughlin brought suit in federal court (Western District of Virginia in Abingdon) against Crestar Bank (the successor to United Virginia), alleging malicious prosecution, "prima facie tort," and slander of credit. This suit was voluntarily dismissed on October 29, 1990.

12. On June 4, 1990, McLaughlin and his corporations brought suit in a Virginia state court (Halifax County) against United Virginia, alleging breach of a letter agreement of July 3, 1988, regarding a real estate development project in Halifax County. While this suit is ongoing, McLaughlin's individual claims were voluntarily dismissed.

To summarize, there are apparently four actions still pending in the state courts: 1) the consolidated Buchanan County suits which are on appeal to the Supreme Court of Virginia and could result in a bar to the

tortious interference and conspiracy claims in the federal suit;* 2) the United Virginia collection suit, including the counterclaim for mishandling collateral, which is scheduled for retrial; 3) the suit between Crestar and Cardinal, which apparently involves claims not present in the present federal action; and 4) the suit in Halifax County between McLaughlin's companies and United Virginia, which also seems to present claims different from those in the federal suit.

The federal suit (on appeal here) between McLaughlin and United Virginia was stayed in March 1988 in the hope that the state suits would conclusively settle all of the claims between the parties. Because of McLaughlin's voluntary dismissals, however, one of which was agreed to by United Virginia, and some distinctions between the state and federal claims, it later became evident that the state actions would not accomplish this. After a change in district court judges, a flurry of discovery, and the establishment of a trial date, the district court issued the order dismissing the federal suit under the *Colorado River* doctrine, principally because of McLaughlin's effort at conducting piecemeal litigation and the more advanced status of the state proceedings. The district court dismissed, rather than stayed, the case because it concluded that "future events will not result in the exercise of jurisdiction over the controversy." 758 F.Supp. 375 (W.D.Va.1991).

This appeal followed.

## II

■ Despite what may appear to result in a duplication of judicial resources, "[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). Indeed, with regard to parallel state and federal proceedings, the Supreme Court has held, over and over, as have we, that in the usual case the federal courts *must* hear the cases that fall within their jurisdiction. *See, e.g., Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976) (the duty to hear cases within the federal jurisdiction is "virtually unflagging"); *Gordon v. Luksch*, 887 F.2d 496, 497 (4th Cir.1989) (abstention under *Colorado River* is appropriate "[o]nly in the most extraordinary circumstances"). The limited application of the *Colorado River* doctrine, which allows a federal court to abstain in the face of duplicative state proceedings in only the most "extraordinary" circumstances, is based on the notion that it is the Congress that should prescribe the Article III jurisdiction of the federal courts, not individual judges. *See* Philip B. Kurland, *Toward a Co-operative Judicial Federalism: The Federal Court Abstention Doctrine*, 24 F.R.D. 481, 489 (1959). As the Court stated in *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26, 103 S.Ct. 927, 942, 74 L.Ed.2d 765 (1983), "[W]e emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction."

■ In *Colorado River*, the Court identified four non-exclusive factors that may be considered in determining whether abstention by the federal court in favor of duplicative parallel proceedings is appropriate. The court should consider 1) the preference accorded to the first court assuming jurisdiction over a *res;* 2) the relative inconvenience of the state and federal forums; 3) the need to avoid piecemeal litigation; and 4) the relative order of the state and federal suits. *See Colorado River*, 424 U.S. at 818–19, 96 S.Ct. at 1246–47. Later, the Court added additional factors such as

---

* Even though McLaughlin's personal claims were voluntarily dismissed pursuant to the agreement with the state court and between the parties that the dismissal would be without prejudice to his claims in the federal suit, it is possible that the identity of McLaughlin and his corporations are so close that claim preclusion might apply. Of course, we do not here evaluate that possibility.

whether a federal question is presented in the case, *see Moses H. Cone*, 460 U.S. at 23, 103 S.Ct. at 941, and whether either the state or the federal suit "was a contrived, defensive reaction" to the other, *see id.* at 17–18 n. 20, 103 S.Ct. at 937–38 n. 20 (*dictum* ). The Court also instructed that federal courts are not to use the various identified factors as a "checklist," but must balance the weight of each in accordance with the facts of a given case "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. at 937.

■ Of course, before even considering the *Colorado River* factors, it is first necessary to determine whether there exist parallel duplicative state proceedings. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *See New Beckley Mining Corp. v. International Union, UMWA*, 946 F.2d 1072, 1073 (4th Cir.1991). In *New Beckley*, the court held that the actions, although "virtually identical" were not parallel because the remedy sought and the issues raised were not the same. *Id.* at 1074. Moreover, " '[t]he *Colorado River* doctrine does not give federal courts *carte blanche* to decline to hear cases within their jurisdiction merely because issues or factual disputes in those cases may be addressed in past or pending proceedings before state tribunals.' " *Id.* (quoting *United States v. SCM Corp.*, 615 F.Supp. 411, 417 (D.Md.1985)).

■ In the case at hand, the district court concluded that the state and federal cases were "substantially similar" because many of the claims are the same and the various proceedings arise out of the same operative, albeit protracted, set of facts. While we agree that the federal and state actions have similar claims and draw on common events, they are not totally duplicative. In several actions, the banks have sought to collect on various notes and against various collateral, and in others McLaughlin's corporations have contended that these collection efforts were abusive. As the events unfolded, various of the claims were amended, dismissed, and consolidated. Whether the changing nature of

the suits is itself the product of abusive conduct is not now before us. We only note that McLaughlin's personal rights, as asserted in the federal diversity case, are not now protected in state proceedings. In supposing otherwise, the district court appears to have taken into account state proceedings which were no longer in existence or which encompassed claims different from those in the federal action (e.g. the Halifax County suit, the dismissed case between Cardinal Fuels and United Virginia, and the Cardinal suit against Crestar) for the purposes of determining whether duplicative state proceedings exist. *But see Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir.1984) (issue is whether the state case, "as it *currently* exists, *is* a parallel, state-court proceeding"). In addition to party differences, it would appear that a breach of contract claim pending in the federal case is not pending, nor has it ever been pending, in any state court proceeding. It cannot be said therefore that parallel duplicative proceedings exist in state court so as to present a *Colorado River* issue.

The district court was obviously troubled by the multiplicity of suits and the apparent indulgence of the parties in selecting forums, as are we. If, however, an abuse of the judicial process is found to be involved in the selection of a particular forum, the remedies available involve discipline of the parties and their counsel and even, in extraordinary circumstances, dismissal. *See Moses H. Cone*, 460 U.S. at 18 n. 20, 103 S.Ct. at 937–38 n. 20 (*dictum* ). In response to questions directed at the plaintiff during oral argument about the reasons for the various voluntary dismissals by him, explanations were provided. While we are not given the mechanisms for evaluating these explanations, it cannot be denied that there are a multiplicity of parties, including three separate banks, and a multiplicity of events which occurred at differing times for different reasons, all contributing to the confusion. What is apparently demonstrated by the record is a complex, heatedly litigated series of complaints, involving various combinations of parties, which are suspiciously fragmented. Nevertheless, absent a finding of bad faith,

the courts should, within the jurisdiction given them, seek to dispose of the disputes efficiently and justly. Because we conclude that there is now no parallel state proceeding that is duplicative of the federal suit and that McLaughlin's rights are not fully protected in any state proceeding, a federal court presented with McLaughlin's claim may not surrender its jurisdiction in deference to a state proceeding which could only potentially adjudicate his claims. While it cannot be denied that there is an overlap with various of the state suits, principles of res judicata, collateral estoppel, and equitable stay will help to minimize the potential for undue waste.

Our decision that the *Colorado River* exception to the rule that federal courts adjudicate claims presented to them within their jurisdiction should not be applied in this case is not intended to suggest to the district court the future course of events in this litigation. We leave open all issues of whether one party or the other has failed to act in good faith and whether an equitable stay is nevertheless appropriate on remand.

Accordingly, we reverse the decision to dismiss this case and remand for further proceedings.

REVERSED AND REMANDED.

