VULCAN CHEMICAL TECHNOLO-GIES, INCORPORATED; Vulcan Materials Company, Plaintiffs–Appellees,

v.

Phillip J. BARKER, individually and d/b/a Sabra Asia, Defendant–Appellant.

No. 01–1943.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 27, 2002.

Decided May 21, 2002.

**ARGUED:** Franklin Murry Tatum, III, Wright, Robinson, Osthimer & Tatum, Richmond, Virginia, for Appellant. Anton Henry Gaede, Jr., Bradley, Arant, Rose & White, L.L.P., Birmingham, Alabama, for Appellees. **ON BRIEF:** Mark S. Yacano, Wright, Robinson, Osthimer & Tatum, Richmond, Virginia; Hartley Thorson Hansen, Kevin Robert Culhane, Hansen, Boyd, Culhane & Watson, Sacramento, California; Stephen McQuiston Hodges, Pennstuart, Abingdon, Virginia, for Appellant. Jeffrey M. Anderson, Bradley, Arant, Rose & White, L.L.P., Birmingham, Alabama; Thomas G. Slater, Jr., Ray V. Hartwell, III, Darryl S. Lew, Geremy Kamens, Hunton & Williams, Richmond, Virginia; William B. Poff, Frank K. Friedman, R. Lucas Hobbs, Woods, Rogers & Hazlegrove, Roanoke, Virginia, for Appellees.

Before NIEMEYER and LUTTIG, Circuit Judges, and HERLONG, United States District Judge for the District of South Carolina, sitting by designation.

Vacated and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Judge LUTTIG joined. Judge HERLONG wrote an opinion concurring in the result.

**OPINION**

NIEMEYER, Circuit Judge.

We are presented with the question of whether this action should have proceeded

to hearing and judgment in the face of an earlier state court judgment that involved the same parties and issues but was subject to appeal.

When Vulcan Chemical Technologies, Inc., terminated Phillip Barker's chemical-products Distribution Agreement, Barker sued the company and its parent, Vulcan Materials Company, (collectively, "Vulcan") in California state court for breach of contract and related claims. Consistent with the Distribution Agreement, Vulcan filed a motion to compel arbitration under the California Arbitration Act, and the state court granted the motion, staying further proceedings until completion of the arbitration. After the arbitrator ruled in favor of Barker, awarding him $21 million in damages, Vulcan filed this action in the Western District of Virginia to vacate the arbitration award, invoking the Federal Arbitration Act. Shortly thereafter, the California state court entered a judgment granting Barker's motion to confirm the arbitration award and denying Vulcan's motion to vacate it, a judgment that Vulcan appealed. Two months later, however, the district court vacated the very award that had been confirmed by the California court, remanding the issue of damages to the arbitrator "for a determination not inconsistent with this opinion." On appeal, Barker contends that the district court acted without jurisdiction or, alternatively, should have abstained.

We conclude that, because Vulcan filed a motion to arbitrate in California under the California Arbitration Act and a California court has confirmed the arbitration award—albeit in a judgment subject to appeal—the district court should have abstained from hearing and deciding this case. Accordingly, we vacate the district court's judgment and remand with instructions to dismiss this action.

I

Phillip Barker was one of the founders of Rio Linda Chemical Company, a Sacramento, California corporation which developed sodium chlorite and chlorine dioxide chemicals as biocides for vegetables and water treatment. In 1989, Albright and Wilson Americas, Inc., a Richmond, Virginia subsidiary of Tenneco Corporation, purchased the stock of Rio Linda. At the same time, Rio Linda entered into a consulting agreement with Barker that gave Barker the option, upon payment of a sum equal to 800% of after-tax profits, to become the exclusive distributor of sodium chlorite/chlorine dioxide chemicals in the Far East.

By 1994, Rio Linda's financial condition had deteriorated to the point that the company had a negative net worth. Around that time, Barker exercised his option to purchase the rights to distribute specified products in four countries in the Far East and, pursuant to the pre-established formula, paid the price of $32,888. (If Barker had exercised his option in 1989, he would have been required to pay approximately $5.2 million.) These distribution rights were memorialized in a Distribution Agreement between Rio Linda and Barker dated March 1, 1995.

Under the Distribution Agreement, Rio Linda appointed Barker the exclusive distributor of several Rio Linda chemical products for Japan, South Korea, Taiwan, and China. In section B.1. of the Distribution Agreement, Barker agreed (1) to "use his best efforts" in promoting and selling the products, (2) to "develop fully the market," and (3) to purchase all of his requirements of these chemical products for the specified territory from Rio Linda. The Distribution Agreement was to be governed by the law of Virginia. Finally, the parties agreed to settle any "dispute or claim arising out of or relating to this

Agreement" by arbitration. The arbitration clause provided:

> The arbitration shall take place in Sacramento, California, [where both Rio Linda and Barker were located] or another mutually acceptable California location and will be final and binding. . . . Judgment upon an award, including any interim award, rendered by the arbitrator may be entered in any Court having jurisdiction over the parties. The arbitrator may determine all questions of law and jurisdiction governing the arbitration, including questions as to whether the dispute is arbitrable. The arbitrator has the right to grant interim or permanent relief, including equitable relief, and shall have the discretion to award costs including reasonable legal fees, interest and costs of arbitration.

In mid–1995, Albright and Wilson sold Rio Linda for $12.9 million to Vulcan Materials Company, a New Jersey corporation head-quartered in Alabama. Vulcan Materials changed Rio Linda's name to Vulcan Chemical Technologies ("Vulcan Chem–Tech"), but Vulcan Chem–Tech remained headquartered in Sacramento, California. Barker has alleged that, from the time Vulcan Materials acquired Rio Linda, he detected "a concerted effort to prevent [him] from succeeding in the Asian market." He alleged that Vulcan Materials and Vulcan Chem–Tech "disparag[ed] Barker in the marketplace, ignor[ed] his exclusive rights and fail[ed] to make products available to him to sell." Ultimately, in March 1999, Vulcan Chem–Tech terminated Barker's exclusive distributorship, claiming that Barker had failed to "perform [his] obligations under the [distribution] agreement." Although the letter of termination referred to Barker's duties imposed by section B.1. of the Distribution Agreement (to "use best efforts" in promoting products, to "develop fully the market" for the products, and to purchase 100% of its requirements for the market from Rio Linda), the letter referred to no specific failures to fulfill those duties.

Shortly after receiving Vulcan Chem–Tech's letter of termination, Barker commenced an action against Vulcan Materials and Vulcan Chem–Tech in the Superior Court of California for the County of Sacramento, alleging breach of contract, violation of California's Unfair Practices Act, and related torts. Barker joined Vulcan Materials as a defendant on the allegation that Vulcan Materials was Vulcan Chem–Tech's alter ego. Relying on the arbitration clause in the Distribution Agreement and on the California Arbitration Act, both Vulcan Materials and Vulcan Chem–Tech moved to compel arbitration. When Barker resisted the motion, arguing in part that Vulcan Materials was not a party to the arbitration agreement, Vulcan Materials agreed to participate in the arbitration and to be bound by the arbitrator's decision. Explicitly relying on that agreement, the California Superior Court then granted Vulcan's motion to compel arbitration and stayed court proceedings "pending completion of arbitration." Vulcan nominated a former state judge to be the arbitrator, and Barker agreed.

The arbitration lasted 26 days, during which the parties presented the testimony of 22 witnesses and introduced 1,000 exhibits totaling 29,000 pages. Applying Virginia law, the arbitrator concluded that the evidence did not support Vulcan's claim that Barker failed to perform his responsibilities under the Distribution Agreement and that Vulcan Chem–Tech had no cause to terminate the Distribution Agreement. The arbitrator found further that the Vulcan companies "failed to fulfill their obligations under the Agreement" and to support Barker in his efforts. In addition, the arbitrator found that Vulcan "breached the

covenant of good faith and fair dealing implied in every contract." Relying on the methodology proposed by Barker's expert witness, the arbitrator calculated compensatory damages, taking into account Barker's lost profits, and rendered an award of $21,128,000. In addition, the arbitrator awarded Barker costs and attorneys fees and ordered Vulcan to pay the arbitrator's costs and fees. The award was entered on March 21, 2001.

Within two days, Vulcan commenced this action to vacate the arbitration award under Section 10 of the Federal Arbitration Act in the Western District of Virginia, Big Stone Gap Division. Vulcan relied on diversity jurisdiction, as Vulcan Chem–Tech had by then relocated to Alabama, creating complete diversity between Barker and Vulcan. During the same period, Barker, after waiting the 15–day period required by California law, filed a motion in the California Superior Court to confirm the arbitration award. The parties then responded to each other's actions. Vulcan filed a motion in the California Superior Court to vacate the arbitration award, again relying on Section 10 of the Federal Arbitration Act, and Barker filed a motion in this action to stay, abstain, or dismiss. The district court not only denied Barker's motion to stay, abstain, or dismiss but enjoined Barker from pursuing the California litigation. After this court reversed that injunction, the Superior Court of California confirmed the arbitration award on June 1, 2001. Vulcan appealed that decision, which is currently pending.

Two months later, the district court in this case rejected Barker's jurisdictional challenges and vacated the arbitration award, remanding the matter to the arbitrator for a determination of damages in accordance with the district court's conclusions. On appeal, Barker challenges the district court's jurisdiction and, alternatively, its refusal to abstain.

## II

Barker contends first that the district court lacked jurisdiction to hear Vulcan's complaint for two reasons. First, Barker maintains that this action is not "an independent original proceeding but ancillary to and part of Barker's [original] Superior Court suit filed in April 1999." As such, he argues that, because the parties were not of diverse citizenship when the California case commenced, Vulcan Chem–Tech's subsequent relocation to Alabama cannot be relied on to create complete diversity of citizenship.

Vulcan does not dispute that the Superior Court of California had jurisdiction to compel arbitration and that the California court retained jurisdiction pending arbitration. Nor does it deny that the California court had jurisdiction to deny its motion to vacate the arbitration award and to grant Barker's motion to confirm the award. Rather, it maintains that this action, commenced under Section 10 of the Federal Arbitration Act, 9 U.S.C. § 10, to vacate the award is a distinct claim which it is entitled to pursue by virtue of the authorization conferred by the Federal Arbitration Act and diversity jurisdiction under 28 U.S.C. § 1332.

We agree with Vulcan that this action is an independent action authorized by the Federal Arbitration Act, with jurisdiction conferred by 28 U.S.C. § 1332. Section 10 of the Act creates a separate cause of action to vacate an arbitration award under certain limited circumstances. 9 U.S.C. § 10; *see also Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193, 197–204, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000) (recognizing that § 10 motions begin a separate proceeding and that venue is not limited to the district of the

arbitration). The Section 10 cause of action is independent of any action that may have been filed to compel arbitration. *Cf. Green Tree Fin. Corp.—Ala. v. Randolph,* 531 U.S. 79, 86, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) ("The FAA ... permit[s] parties to arbitration agreements to bring a separate proceeding in a district court to enter judgment on an arbitration award once it is made (or to vacate or modify it)...."). In addition, at the time this Section 10 action was commenced, the parties were of diverse citizenship, giving the district court jurisdiction. Accordingly, we reject Barker's jurisdictional challenge based on the contention that this case is a continuation of the California case. *See Johnson v. De Grandy,* 512 U.S. 997, 1005, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (noting that "plaintiffs are free to litigate in any court with jurisdiction").

■ Barker also argues in challenge of jurisdiction that, under the *Rooker–Feldman* doctrine,[1] "any subject matter jurisdiction that the district court may have had was lost when the Superior Court [in California] entered judgment on the identical substantive issues involving the same parties." Barker argues that the district court, "by ruling on Vulcan's petition to vacate [the arbitration award] after the

Superior Court ruled in favor of Barker on the same substantive issues ... sat in judgment of the Superior Court and effectively impaired that court's ability to bring a case that had been pending on its docket for two years to a logical and dignified end." At bottom, Barker asserts that the district court's "refusal to dismiss Vulcan's petition to vacate creates the potential for a train wreck between the California state court and the federal courts."

Barker's position illuminates the tension between maintaining a dual system, wherein parallel actions may proceed to judgment until one becomes preclusive of the other, and the need to avoid federal lower-court review of state cases. However, because we conclude, as we explain below, that Vulcan's agreement to submit to the jurisdiction of the California state courts should preclude federal oversight of the arbitration, and, moreover, that the district court should have abstained under the *Colorado River* doctrine, we do not reach Barker's *Rooker–Feldman* argument.[2]

### III

. ■ In the Distribution Agreement, Vulcan Chem–Tech (at the time, Rio Linda) agreed to submit any dispute arising under the Agreement to "final and bind-

---

1. The doctrine is stated as follows: "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

2. Our concurring colleague would reach the *Rooker–Feldman* issue and decide the case under that doctrine, concluding that its application is jurisdictional in this case. But this approach fails to recognize the fact that the district court in Virginia obtained jurisdiction over Vulcan's Section 10 claim before the California court did. It would be a novel application of the already beleaguered *Rook-*

*er–Feldman* doctrine to divest a federal court of subject matter jurisdiction simply because a parallel case was later filed in State court seeking to decide the same question. *See generally* Thomas D. Rowe, Jr., *Rooker–Feldman: Worth Only the Powder to Blow It Up?,* 74 Notre Dame Law Review 1081 (1999) (forward to Symposium, *The* Rooker Feldman *Doctrine,* noting general agreement with the notion that *Rooker–Feldman* does not make a significant "difference beyond the effects of other limits on federal courts' exercise of their powers" and that there is a "proliferation of lower case law with many different emphases and some highly questionable decisions").

ing" arbitration in Sacramento, California. And when the dispute arose about whether Vulcan Chem–Tech properly terminated the Distribution Agreement, Vulcan Chem–Tech justifiably filed a motion under the California Arbitration Act to compel arbitration. Its determined election to resolve the dispute through arbitration in California is underscored by the agreement of its parent, Vulcan Materials, to submit to binding arbitration the question of whether it was Vulcan Chem–Tech's alter ego. Under this process invoked by Vulcan, the Superior Court of California granted Vulcan Chem–Tech's motion to compel arbitration and stayed further proceedings until the arbitration was completed.

Moreover, under the California Arbitration Act, "[t]he making of an agreement ... providing for arbitration to be had within [California] [is] deemed a consent of the parties thereto to the jurisdiction of the courts of [California] to enforce such agreement by the making of any orders provided for in [the California Arbitration Act] and by entering of judgment on an award under the agreement." Cal. Civ. Code § 1293. Accordingly, when Vulcan moved the California court to compel arbitration in California, not only did it elect to use a California forum for the arbitration, it also inherently agreed to use the California state court system as its forum for sorting out the effect of the arbitration. Vulcan thereafter willingly engaged in a full arbitration proceeding, without objection to the order compelling arbitration or to its location. Having elected, enforced, and implemented the arbitration clause in California, Vulcan should not be permitted to renege on its agreements now that it has lost in that proceeding.

■ Vulcan's agreement to arbitrate in California under the supervision of the California state courts is consistent with the language of the Distribution Agreement, which selected a California forum for resolving disputes. Courts routinely enforce such forum-selection clauses. *See, e.g., The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (holding that forum selection clauses in international contracts are prima facie valid); *see also Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (Kennedy, J., concurring) (stating that *The Bremen*'s "reasoning applies with much force to federal courts sitting in diversity"); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that forum-selection provisions do not inherently offend due process); *Bryant Elec. Co., Inc. v. City of Fredericksburg,* 762 F.2d 1192, 1195 (4th Cir. 1985) (applying *The Bremen* rule in a domestic commercial case); *Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.,* 696 F.2d 315, 317 (4th Cir.1982) (recognizing the parties' right to "agree in advance to submit controversies arising out of their contract to the jurisdiction of a given court"). This freedom to choose a forum is also recognized under Virginia law, which the parties chose to use in resolving disputes under the Distribution Agreement. *See Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.,* 240 Va. 337, 397 S.E.2d 804, 807 (1990) (embracing "the modern view" that choice of forum clauses are "prima facie valid"). Thus, absent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced. *The Bremen,* 407 U.S. at 10, 92 S.Ct. 1907; *Mercury Coal,* 696 F.2d at 317; *Paul,* 397 S.E.2d at 807.

Enforcing the parties' agreement to a California arbitration under the supervision of the California court system is also consistent with the Federal Arbitration

Act's primary purpose of "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). In *Volt*, one party to an arbitration agreement sought to employ the Federal Arbitration Act to the exclusion of the California Arbitration Act, suggesting that the federal act preempted the state act. The Supreme Court rejected the argument in deference to the state proceedings, stating:

> [I]t does not follow that the FAA [Federal Arbitration Act] prevents the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. Indeed, such a result would be quite inimical to the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms. Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.... *Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA,* even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward. By permitting the courts to "rigorously enforce" such agreements according to their terms ... we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind the FAA.

*Id.* (emphasis added).

Because Vulcan agreed to binding arbitration in California and willingly initiated enforcement of its agreement under the supervision of the California state courts, we now conclude that the district court

erred in not enforcing Vulcan's election to pursue that course, not only as a matter of enforcing a forum-selection clause, but also as a matter of holding Vulcan to its election at that time not to pursue an independent federal claim under the Federal Arbitration Act.

## IV

In addition, because of the peculiar circumstances of this case, the district court should have abstained under the *Colorado River* doctrine.

■■■ It is true, as a general rule, that our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other. "Despite what may appear to result in a duplication of judicial resources, '[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir.1992) (quoting *McClellan v. Carland*, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). Moreover, as a general rule, federal courts are bound by a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, when two competing parallel actions seek to apply the same law in deciding whether to enforce or vacate the same arbitration award, maintaining a harmonious relationship between the states and the federal government requires consideration of more complex principles than mere principles of duality.

■■■ Under the principles of *Colorado River*, federal courts may abstain from exercising their jurisdiction in the excep-

341

tional circumstances where a federal case duplicates contemporaneous state proceedings and "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" clearly favors abstention, *id.* (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *McLaughlin*, 955 F.2d at 935. Vulcan's request for a federal court to vacate an arbitration award that a California state court had confirmed in an earlier judgment after considering the same evidence and arguments presents such extraordinary circumstances. We are thus led to consider, as a matter of wise judicial administration, whether the district court should have dismissed the federal claim in deference to the California state proceedings or whether it was correct in exercising its jurisdiction to decide the federal claim.

 The decision whether to abstain necessarily requires resolving the tension between the federal court's obligation to exercise jurisdiction and the "combination of factors counselling against that exercise." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236. Although the prescribed analysis is not a "hard-and-fast" one in which application of a "checklist" dictates the outcome, six factors have been identified to guide the analysis for *Colorado River* abstention: (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law pro-

vides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Moses H. Cone*, 460 U.S. at 15, 19–27, 103 S.Ct. 927; *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236; *McLaughlin*, 955 F.2d at 934–35. At bottom, abstention should be the exception, not the rule, and it may be granted only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28, 103 S.Ct. 927.

 Because any decision to abstain falls within a district court's discretion, we review the decision for abuse of discretion. *Al–Abood v. El–Shamari*, 217 F.3d 225, 232 (4th Cir.2000). Our review is guided by the six *Colorado River* abstention factors.

Under the first factor, while the California court did not have jurisdiction over property that could permit it to exclude the federal court from considering the matter, it nevertheless had jurisdiction over the arbitration award to the same extent that the state court in *Colorado River* had jurisdiction over water rights. Moreover, just as in *Colorado River*, the California court's jurisdiction in this case created a potentiality for conflicting decisions regarding the arbitration award, a potentiality of which Vulcan was completely aware. In these circumstances, the first *Colorado River* factor is applied to favor abstention. *See Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236 (noting the confusion that would arise if there were conflicting decisions regarding water rights).

Under the second factor, the inconvenience of the federal forum in this case also supports abstention in favor of the California state court. The parties to the arbitration agreement were located in the Sacramento, California area, and they had agreed, in the arbitration agreement, to

conduct any necessary arbitration in Sacramento. Most of the witnesses were from that area, and the arbitration in fact was conducted in California. Moreover, at the time the action was commenced in the district court, the action in California had been pending there for almost two years. Vulcan has offered no explanation, other than the parties' agreement in the Distribution Agreement that Virginia courts could have personal jurisdiction over them, for why it would be convenient now to move the case from California to the Western District of Virginia, Big Stone Gap Division. No other nexus between Vulcan and that forum has been suggested.

Under the third factor, while the threat of piecemeal litigation was not overwhelming, it still lurked as a possibility if the district court exercised federal jurisdiction. In fact, as it turned out, the district court's ruling would bring about piecemeal decisionmaking. It vacated the arbitration award and concluded that the arbitration award would not be enforceable against Vulcan Materials as the alter ego of Vulcan Chem–Tech. While the district court purported to rule on the merits of alterego liability, it was not authorized to make that ruling on a petition to vacate an arbitration award. Rather, the district court's decision to relieve Vulcan Materials from the arbitration award would necessitate litigating the alterego issue in the California state court where alterego liability was originally alleged by Barker. At the same time, the arbitration would have to continue against Vulcan Chem–Tech before the arbitrator on the question of damages. The state court litigation would be appealed through the appellate courts of California, while the arbitration decision would again be reviewed by the district court in Virginia. Continuing federal jurisdiction thus meant that the parties would have to look to two forums for resolution of the dispute. Indeed, the district court recognized this potential for piecemeal litigation when it enjoined Barker from litigating in California—an injunction that we earlier reversed. While there may be cases in which piecemeal litigation is appropriate or necessary to enforce the Federal Arbitration Act, *see, e.g., Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), in this case the California court eliminated any such possibility by diligently enforcing the parties' agreement to arbitrate. This factor therefore favors abstention.

Under the fourth factor, the order in which the courts took jurisdiction and the progress of the litigation also favors abstention. The suit in the Superior Court of California was filed in April 1999, and that court ordered the parties to arbitration, on Vulcan's motion, in December 1999. In ordering arbitration, the Superior Court retained jurisdiction, staying further proceedings until completion of the arbitration. After the arbitration award was rendered on March 21, 2001, and after the mandatory 15–day waiting period, Barker filed a motion to confirm the award. Although Vulcan's federal action was commenced before the motion to confirm was filed in the California court, the California action was first-filed, having been filed in April 1999. Moreover, by the time the district court heard oral argument on the motion to vacate, the California court had already entered a final judgment confirming the award and denying Vulcan's motion to vacate. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927. In this case, not only was the California case first-filed, it progressed to judgment first. Accordingly, the fourth factor weighs in favor of abstention.

Under the fifth factor, the rule of decision is not material. Although Vulcan seeks relief under the Federal Arbitration Act, California courts have concurrent jurisdiction over the claim, making the rule of decision less significant. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989). In fact, the California state court has already heard Vulcan's Section 10 claim and denied it. Vulcan has appealed the denial to the California Court of Appeals. In addition, both forums would apply the substantive law of Virginia as provided in the Distribution Agreement.

Under the final factor, there is no evidence to suggest that the California state courts are somehow inadequate to protect the parties' rights under the arbitration agreement. Both the Federal Arbitration Act and the California Arbitration Act seek to enforce arbitration agreements only as contractual matters, according to the terms of the contract. In addition, both acts provide similar grounds for vacating an arbitration award. *Compare* Cal. Civ.Code § 1286.2 *with* 9 U.S.C. § 10. Because both courts apply the same law and policy, this factor also favors abstention.

Notwithstanding our analysis of the six *Colorado River* abstention factors, it is important to note that a factor-by-factor analysis does not fully convey the synergistic effect of all the circumstances. This case was gladly litigated by both parties in California and gladly arbitrated there before an agreed-upon arbitrator. Under California law, the parties, by so partaking, agreed that the arbitration award would be supervised by the California courts. And the California Superior Court confirmed the arbitration award in a final judgment that is now the subject of appeal. Not only was the California court presented with all of the parties' positions—both for and against confirmation—it was pre-

sented with the arguments under both the California and Federal Arbitration Acts.

When Vulcan lost the arbitration and was ordered to pay a large award, it undertook a strategy to obtain a second opinion on the same issue from the district court. This strategy effectively sought to bypass the procedure that Vulcan had elected to follow, as well as to preempt or, if necessary, to reverse the state court that it had earlier employed in the matter.

To validate this strategy would undermine several traditionally valued tenets of wise judicial administration. The judicial system promises one trial, and, by enforcing doctrines of res judicata, collateral estoppel, and full faith and credit, seeks to prohibit relitigating the same issues when the first trial was fair. Moreover, in our dual system of government, again through full faith and credit, the *Rooker–Feldman* doctrine, the *Erie* doctrine, abstention, and other similar doctrines, respect is given by both state and federal governments to the courts of the other. At bottom, the federal-state system of courts seeks, in a cooperative effort, to give one fair trial on a given dispute, to respect each other, and thus to administer justice efficiently.

This case presents a risk of undermining these tenets on at least two fronts. We have found that Vulcan violated its agreement to arbitration and corresponding litigation in California, and that its efforts to circumvent that agreement, especially with the progress made by the California Superior Court, calls loudly for the application of *Colorado River* abstention.

By failing to abstain and thereby relieve the unseemly tension between federal and state courts, we conclude that the district court abused its discretion. In reaching this conclusion, however, we stress the unusual circumstances of this case, in which a state court had entered judgment on the exact issue to be considered by the federal

court before the federal court had even heard argument in the case.

Accordingly, we vacate the judgment of the district court and remand with instructions to dismiss this action.

*VACATED AND REMANDED WITH INSTRUCTIONS.*

HERLONG, District Judge, concurring in the result:

I concur in the result to reverse the district court but on a different basis. Barker asserts that the *Rooker–Feldman, infra,* doctrine divested the district court of jurisdiction. I agree. While I also agree with the majority's reasons for reversal, I believe that the question of jurisdiction must first be resolved. *See Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 202 (4th Cir.2000) (stating that the *Rooker–Feldman* doctrine is jurisdictional). Because it appears that the *Rooker–Feldman* doctrine divested the district court of jurisdiction, I would reverse on that ground.

The *Rooker–Feldman* doctrine provides that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). In making this determination, one pivotal question is whether "the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Brown & Root,* 211 F.3d at 202 (internal quotations omitted).

The facts in this case and *Brown & Root* are essentially the same. Like in *Brown & Root,* the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* was raised before the California state court and the state

court decision preceded the federal court decision. *See* J.A. 931, 964, & 1111. Therefore, the *Rooker–Feldman* doctrine appears to divest the district court of jurisdiction. As such, I would reverse on the alternate ground that the district court lacked subject matter jurisdiction.