EASTERN ASSOCIATED COAL CORP., Plaintiff,

v.

Shelby SKAGGS, Defendant.

No. CIV.A. 2:03–00308.

United States District Court,
S.D. West Virginia,
Charleston Division.

July 23, 2003.

C. David Morrison, H. Toney Stroud, and Rodney L. Bean, Steptoe & Johnson, Charleston, Clarksburg, and Morgantown, for Plaintiff Eastern Associated Coal Corporation.

Roger D. Forman, Forman & Huber, Charleston, for Defendant Shelby D. Skaggs.

## MEMORANDUM OPINION & ORDER

GOODWIN, District Judge.

Pending are plaintiff Eastern Associated Coal Corporation's petition to compel arbitration [Docket 3] and defendant Shelby Skaggs's motion to dismiss [Docket 8] and motion to file a joint memorandum [Docket 6]. For the following reasons, the court **DENIES** the plaintiff's petition to compel arbitration and **GRANTS** Mr. Skaggs's motion to dismiss. The court also **DIS-MISSES** as moot Mr. Skaggs's motion to file a joint memorandum.

## I. Background

The defendant in this case, Shelby Skaggs, is a former employee of the plaintiff, the Eastern Associated Coal Corporation (Eastern). Mr. Skaggs worked for Eastern as a coal miner under the terms of the National Bituminous Coal Wage Agreement of 1998 (the Wage Agreement) and was represented by the United Mine Workers of American (the UMWA). On October 2, 1997, Mr. Skaggs was operating a locomotive in an Eastern mine in Boone County, West Virginia, when he was injured in an accident with a Jeep. Mr. Skaggs applied for and received worker's compensation benefits, including rehabilitation benefits. On July 12, 1999, Eastern discharged Mr. Skaggs, explaining that his physical condition prevented him from returning to his work in the mine.

Following his termination, Mr. Skaggs filed a *pro se* complaint against Eastern in Boone County Circuit Court on September 30, 1999, alleging a deliberate intent to injure on the part of Eastern. Mr. Skaggs subsequently retained counsel and amended his complaint on April 4, 2000, to include a claim that he was discharged in retaliation for his receipt of worker's compensation benefits, in violation of West Virginia worker's compensation laws. Eastern filed for summary judgment. In response, Mr. Skaggs dropped his deliberate intent claim, sought to amend his complaint to add two defendants, and moved to certify his worker's compensation claim as a class action. On May 8, 2001, Mr. Skaggs filed a separate suit in Kanawha County Circuit Court against Eastern and two other defendants, alleging that the defendants' rehabilitation program violated state worker's compensation laws as well as disability discrimination prohibitions in the West Virginia Human Rights Act. The Boone County court granted Eastern's motion for summary judgment on June 7, 2001, and declined to rule on Mr. Skaggs's second motion to amend. Mr. Skaggs appealed, and on June 28, 2002, the West Virginia Supreme Court of Appeals reversed the court's grant of summary judgment and remanded for trial. On December 16, 2002, the Boone County case was transferred to Kanawha County and then

consolidated with the Kanawha County action on April 28, 2003.

Eastern filed the present suit on April 8, 2003. Based on the arbitration provision found in the Wage Agreement, Eastern seeks to compel Mr. Skaggs to arbitrate the claims he has raised in his now-consolidated lawsuits. Eastern bases its suit on § 301 of the Labor Management Relations Act, which provides for a federal cause of action "for breach of a collective-bargaining agreement," 29 U.S.C. § 185, and on the Federal Arbitration Act, which provides that an agreement to arbitrate disputes arising out of a contract "shall be valid, irrevocable and enforceable...." 9 U.S.C. § 2. Mr. Skaggs has responded to the motion to compel arbitration by filing a motion to dismiss, which raises various arguments for why Eastern's motion to compel arbitration should be denied and the case dismissed.[1]

## II. Discussion

In his state court lawsuit, Mr. Skaggs seeks the protection of West Virginia worker's compensation and disability discrimination statutes. Eastern, in contrast, seeks to vindicate its contractual rights under the Wage Agreement. Eastern argues that Mr. Skaggs, by way of the Wage Agreement, has waived his right to bring the West Virginia statutory claims that he pursues in his consolidated Kanawha County lawsuit. Mr. Skaggs argues that the Wage Agreement does not contain a clear and unmistakable waiver of his statutory claims. In addition, Mr. Skaggs argues that Eastern's motion to compel arbitration in this court is barred by the

*Rooker–Feldman* doctrine, that this court should abstain from exercising its jurisdiction under the *Colorado River* doctrine, that Eastern's motion is barred by the doctrine of laches, that Mr. Skaggs's termination was not pursuant to the Wage Agreement, and that claims under the West Virginia Human Rights Act are not subject to arbitration. These latter arguments logically precede the underlying question of whether the Wage Agreement here does in fact waive Mr. Skaggs's statutory claims, and so the court will address them first.

### A. *Rooker–Feldman* Doctrine

Mr. Skaggs first argues that the court should "abstain from hearing this case pursuant to the *Rooker–Feldman* doctrine." (Skaggs Mem. in Supp. of Mot. to Diss., at 5.) Contrary to the defendant's characterization, the *Rooker–Feldman* doctrine is not an abstention doctrine, but is instead a jurisdictional bar. *See American Reliable Ins. Co. v. Stillwell*, 336 F.3d 311, 315–16 (4th Cir.2003). Under *Rooker–Feldman*, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. DeGrandy*, 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). The key question "is whether a party seeks the federal district court to review a state court decision and thus pass on the merits of that state decision." *Jordahl v. Democratic Party of*

---

**1.** Mr. Skaggs also filed a motion to file a joint memorandum with, Gary Massey, a plaintiff with a similar suit also pending before this court, *Eastern Associated Coal Corporation v. Massey*, Civ. Act. No. 2:03–0309. Prior to the court's ruling on that motion, Mr. Massey and Mr. Skaggs each filed an identical memorandum in their respective cases in support of their motions to dismiss. Because the cases have not been consolidated, and because separate (if identical) motions and memoranda were filed in each case, the court will consider and rule on the motions to dismiss separately in the two separate cases. The court therefore dismisses the motion to file a joint memorandum as moot.

*Va.*, 122 F.3d 192, 202 (4th Cir.1997). To put it another way, the question is whether the party "sues in federal district court to readjudicate the same issues decided in the state court proceedings." *Brown & Root, Inc. v. Breckenridge,* 211 F.3d 194, 201 (4th Cir.2000).

The defendant argues that *Rooker–Feldman* applies here because Eastern had an adequate opportunity to raise arbitration in state court. The relevant question under *Rooker–Feldman,* however, is not simply whether the plaintiff had an adequate opportunity to raise the issue in state court, but whether the plaintiff's federal claim would in effect upset or overturn a judgment of the state court. In this case, despite the lengthy proceedings in state court, none of the state court rulings have decided (or necessarily implied) that Mr. Skaggs's claims here are not subject to arbitration. The question of arbitrability of a claim is independent of the merits of that claim. *See General Drivers, Warehousemen and Helpers Local Union No. 509 v. Ethyl Corp.,* 68 F.3d 80, 83 (4th Cir.1995). Accordingly, the various rulings by West Virginia courts on the merits of Mr. Skaggs's claims have no bearing on whether those claims are arbitrable. A decision by this court ordering Mr. Skaggs to arbitrate his claims would in no way upset, overturn, or undermine the merits of any of the decisions of the West Virginia courts. Eastern does not seek to readjudicate a claim already decided adversely by the West Virginia courts, but rather presents "an independent claim." *Brown & Root,* 211 F.3d at 202 (quotations and citation omitted). For these reasons, the court concludes that the *Rooker–Feldman* doctrine has no application to the present case.

## B. *Colorado River* Abstention

The defendant next argues that the court should abstain from exercising jurisdiction under the abstention doctrine articulated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under *Colorado River* abstention, a federal district court may abstain from exercising its jurisdiction in certain cases "where a federal case duplicates contemporaneous state proceedings" and "exceptional circumstances" related to the conservation of judicial resources and wise judicial administration "clearly favor[ ] abstention." *Vulcan Chem. Techs., Inc. v. Barker,* 297 F.3d 332, 340–41 (4th Cir.2002) (citations omitted). Generally speaking, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of another," despite the duplication of judicial resources that this may entail. *Id.* at 340. Moreover, "federal courts are bound by a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.' " *Id.* (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236.

In order for *Colorado River*-type abstention to even be considered, there is a "threshold requirement [that] there . . . be parallel proceedings in state and federal court." *Gannett Co. v. Clark Constr. Group,* 286 F.3d 737, 741 (4th Cir.2002). Here, Eastern does not argue otherwise. Both the state court case and this case involve the same dispute between the same parties. Once the presence of parallel proceedings is established, the following six factors guide the court's determination of whether to abstain under *Colorado River:*

(1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal lit-

igation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Vulcan,* 297 F.3d at 341 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15, 19–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The parties agree that the first factor is not relevant here. The second factor does not counsel abstention, as both courts in question are here in West Virginia (indeed, both courts are within a block of each other here in the city of Charleston).

As for the third factor, the defendant argues that an order compelling arbitration would result in piecemeal litigation. He argues that his pending motion for class certification in state court would be disrupted if arbitration were ordered. In addition, the defendant points out that even if he were compelled to arbitrate his claims against Eastern, he would still have claims pending in state court against the other two defendants who allegedly acted in conjunction with Eastern in violating West Virginia law. The court is not persuaded by these arguments. As for the pending motion to certify a class, the court does not see how this gives rise to a danger of piecemeal litigation. If the court were to order Mr. Skaggs to arbitrate his claims, he would be enjoined from pursuing any pending motions related to his claims against Eastern, including the motion to certify a class.

■ As for the second argument, it is true that a court order compelling Mr. Skaggs to arbitrate his claims against Eastern will result in piecemeal litigation, insofar as his claims against the other defendants (not parties to the Wage Agreement) will remain pending in state court. Considering the principles underlying abstention, however, the court concludes that the relevant question for abstention purposes is not simply whether granting the plaintiff's relief will result in piecemeal litigation, but whether it is the *federal court's* involvement in the case that will lead to piecemeal litigation. In this case, Eastern is free to bring a motion to compel arbitration in state court, as it has done in federal court. If the state court compelled Mr. Skaggs to arbitrate his claims against Eastern, the resulting piecemeal litigation would be the same as if this court were to order arbitration. To put it another way, the threat of piecemeal litigation in this case does not arise from the possibility of federal court involvement, but rather arises from the existence of the arbitration clause in the Wage Agreement, which may require Mr. Skaggs to arbitrate his claims against Eastern but which will not require arbitration of his claims against those defendants not a party to that Agreement. Abstention is a doctrine grounded in an interest in "maintaining a harmonious relationship between the states and the federal government." *Vulcan,* 297 F.3d at 340. Accordingly, abstention is called for only when it is the interplay between the parallel federal and state court actions that causes the risk of piecemeal litigation, not when that danger already exists in the state court action considered alone. Because this court's exercise of jurisdiction over this parallel action does not give rise to some new danger of piecemeal litigation, this factor does not weigh in favor of abstention.

The fourth factor concerns the relative progress of the state and federal cases. The Supreme Court has noted that when applying this factor, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone,* 460 U.S. at 21, 103 S.Ct. 927. In this case,

substantial progress has been made in Mr. Skaggs's state-court action in this case, which has been pending for over three years. In contrast, the only progress in this federal action is the filing of the motions presently under consideration. While Mr. Skaggs filed his state court suit in September of 1999, he did not amend his complaint to include worker's compensation claims until April of 2000. Because the worker's compensation claims are the subject of Eastern's present suit, the court will use April of 2000 as the first date on which Eastern would have known that it was being sued for claims that it now seeks to arbitrate. Eastern responded with a motion for summary judgment, but did not move the state court to compel arbitration of Mr. Skaggs's worker's compensation claim. In May of 2001, Mr. Skaggs filed another suit against Eastern in Kanawha County Circuit Court alleging both worker's compensation and disability discrimination claims. Eastern did not file a motion to compel arbitration in this case. In June of 2001, the Boone County Circuit Court granted summary judgment to Eastern. Mr. Skaggs appealed this decision to the West Virginia Supreme Court of Appeals, which heard argument on the matter and issued a published decision reversing the grant of summary judgment on June 28, 2002. After remand to Boone County Circuit Court, that case was transferred to Kanawha County. Eastern did not file its federal complaint and motion to compel arbitration until April of 2003, three years after Mr. Skaggs filed his worker's compensation claim in Boone County and almost two years after he filed his worker's compensation and disability discrimination claims in Kanawha County.

It would seem that there are at least two policy considerations underlying this fourth factor in the *Colorado River* abstention doctrine that are relevant here. First, the more that a state court lawsuit has progressed, the greater the state's own investment and involvement in the proceeding. As a matter of comity, the more the state has invested its time and resources into the proceedings, the less appropriate it is for a federal court to intervene and disrupt those proceedings. *See Gannett*, 286 F.3d at 748 (noting that abstention is based in part on principles of comity). Second, the longer that the party who now seeks federal court intervention has actively participated in the state court proceedings, the more that party has forfeited any right to a federal forum. *See Vulcan*, 297 F.3d at 343 (finding abstention appropriate in part because the case "was gladly litigated by both parties in California," and that only after Vulcan had received a negative outcome did it seek to "bypass the procedure that [it] had elected to follow" by filing suit in federal court).

Both of these concerns are present here. The courts of West Virginia have spent a good deal of time and resources on Mr. Skaggs's state court lawsuits, one of which has already proceeded through circuit court to the Supreme Court of Appeals and back. In addition, throughout the course of the state court litigation Eastern could at any time have either moved the state court to compel arbitration of Mr. Skaggs's claims or filed suit in federal court to do the same.[2] Given the signifi-

---

**2.** It was only on March 21, 2001 that the Supreme Court definitively ruled that the Federal Arbitration Act applied to collective bargaining agreements for non-transportation workers, such as the agreement here. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). As early as 1997, however, the Fourth Circuit held that the FAA applied to individual employment contracts for non-transportation workers, using reasoning much the same as that of the Supreme Court four years later. *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir.1997). Given the precedent of *O'Neil*, Eastern was on notice from the

cant length of time that Mr. Skaggs's state court lawsuits have been proceeding, the serious amount of time and energy invested by the West Virginia courts in these suits, and the three years that Eastern actively participated in those suits before belatedly filing this federal lawsuit, this fourth factor counsels heavily in favor of this court's abstention in this case.

The fifth factor weighs in favor of exercising jurisdiction, because federal law provides the rule of decision on the merits. The merits issue in the present case is whether, under the Wage Agreement, Mr. Skaggs must arbitrate the claims he brought in his state lawsuits. This issue depends on the application of the Federal Arbitration Act and the federal caselaw interpreting that Act. That said, the Fourth Circuit in *Vulcan* stated that "the rule of decision [was] less significant" because the state court had concurrent jurisdiction over the plaintiff's Federal Arbitration Act claim. *Vulcan*, 297 F.3d at 343. The same is true here.

As for the sixth factor, the court has no reason to doubt the adequacy of the state forum to protect the parties' rights in this matter. As just noted, state courts have concurrent jurisdiction over claims under the Federal Arbitration Act. Eastern has provided no evidence or argument suggesting that the West Virginia courts would be unable to apply the Act in this case. This factor does not weigh in favor of the court exercising its jurisdiction in this case.

Considering all of these factors together in light of the particular circumstances of this case, the court concludes that this case does present the sort of "exceptional circumstances" warranting abstention. East-

ern has presented no justification for its long delay in seeking federal-court intervention in this case, and the court can think of none. The court has no reason to doubt Eastern's ability to pursue its federal rights in the state court system where Eastern has willingly litigated Mr. Skaggs's worker's compensation claims for over three years. Accordingly, the court abstains from exercising its jurisdiction over Eastern's complaint in this case.[3]

## III. Conclusion

Given the substantial progress in Mr. Skaggs's state court lawsuits, one of which has now been pending for three years, and Eastern's willing participation in those lawsuits without seeking federal court intervention, the court abstains from exercising its jurisdiction over Eastern's complaint at this late date. Accordingly, the court **DENIES** Eastern's motion to compel arbitration and **GRANTS** Mr. Skaggs's motion to dismiss.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party, and **DIRECTS** the Clerk to post this published opinion at *http://www.wvsd.uscourts.gov.*

---

time that Mr. Skaggs first pursued an arbitrable claim in state court that it had a sound legal basis for filing a suit in federal court to compel arbitration if it had so wished. This was definitely confirmed by the *Circuit City* decision in March of 2001, still two years

before Eastern filed the present federal lawsuit.

**3.** Because the court abstains from exercising jurisdiction, the court need not address the parties' remaining arguments.